[No. 3954.   Decided January 9, 1902.]

MARTHA SCHULTHEIS, *as Guardian, Respondent,* v. L. B.
NASH *et al., Appellants.*

ATTORNEY AND CLIENT — SUBSTITUTION OF ATTORNEY — NOTICE.

Under Bal. Code, § 4769, authorizing a change of attorneys at any time before the final determination of an action, upon the order of the court on the application of the client therefor, a notice issued by citation is sufficient, provided the attorney is thereby given reasonable notice of the application for a change.

SAME — EVIDENCE — CONTRACT FOR COMPENSATION — ADMISSIBILITY.

In an application for the substitution of attorneys, which Bal. Code, § 4769, authorizes, provided the charges of the attorney have been paid by the party asking the change to be made, the refusal of the court to admit in evidence a contract between the attorney and client for his fees, and its action in governing the admission of evidence as to the value of his services by the rule of *quantum meruit,* was erroneous.

SAME — EMPLOYMENT BY GUARDIAN — LIABILITY OF WARD'S ESTATE FOR COMPENSATION.

Under Bal. Code, § 6402, which authorizes guardians to prosecute and defend for their wards in all cases and under Id., ₃ 6405, which makes it the duty of a guardian to manage the estate for the best interests of the ward, pay all just debts due from the ward out of his estate, collect all debts due the ward, and in case of doubtful debts compound the same, a guardian is authorized to enter into a contract agreeing to pay attorneys one-half of all the estate they may recover for the ward in an action brought to establish his right thereto.

Appeal from Superior Court, Spokane County.—Hon. JESSE P. HOUSER, Judge. Reversed.

*Crow & Williams, R. E. Porterfield* and *James Dawson,* for appellants.

*David Herman,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—Martha Schultheis was appointed general guardian of her infant son, Arthur Kornetsky, by the superior court of Lincoln county, and qualified as such guardian. On the 23d day of February, 1897, she entered into a written contract with Nash & Nash, attorneys at law, as follows:

"MEMORANDUM OF CONTRACT, made and entered into this 23d day of February, 1897, by and between Nash & Nash, parties of the first part, and Martha Schultheis as the mother and guardian of Arthur Kornetsky and for his use and benefit, who is the child of Rudolph Gorkow, deceased, lately a brewer of the city of Spokane, state of Washington.

WITNESSETH: That, whereas, the said Rudolph Gorkow was the father of my son, Arthur Kornetsky, now aged aged six years, and that the said child is illegitimate, not having been born in wedlock; and, whereas, the said Rudolph Gorkow at all times recognized said child as his son and also recognized him before competent witnesses; and,

whereas, the said Rudolph Gorkow died, leaving a will, and in said will made no reasonable provision for the said child; and, whereas, the said Arthur Kornetsky is the only heir of said Rudolph Gorkow, thereby having title to all of his property;

"And, whereas, I, the said Martha Schultheis, mother of said child, am anxious to contest said will for and on behalf of said child, and secure to him all the rights in said property as the sole heir of said Rudolph Gorkow, deceased; and, whereas, I am unable to furnish the necessary funds and fees for legal advice and services, and am yet desirous of engaging the services of the firm of Nash & Nash, attorneys as aforesaid, for the purpose above mentioned.

"Now, therefore, in consideration of said Nash & Nash agreeing to undertake and to contest said will, and to do all things necessary to secure unto the said child Arthur Kornetsky, aforesaid, all his rights and property by virtue of his being the sole heir of said Gorkow, deceased, I agree to pay said Nash & Nash for such services one-half of all such money, property and effects as they may secure out of said estate of said Rudolph Gorkow, deceased, either by suit or other manner, after paying all expenses for litigation, and this shall be in full compensation for services rendered by said Nash & Nash herein, after I have advanced to said Nash and Nash all costs incurred in said litigation; that I, Martha Kornetsky, now Martha Schultheis, the mother of Arthur Kornetsky, have no means of engaging counsel or attorneys for the purpose of litigating this claim, therefore this consideration is contingent upon their gaining anything out of actual costs incurred, such costs being payable by me to said Nash & Nash.

"In witness whereof, we have hereunto set our hands and seals the year and day first above written.

Nash & Nash,    (Seal)

Martha Schultheis,    (Seal)

As Guardian of Arthur Kornetsky.

Jos. Schultheis.

Signed, sealed and delivered in presence of Paul C. Dormitzer."

Thereafter Nash & Nash brought an action against the estate of Rudolph Gorkow, deceased, which was conducted through the superior and supreme courts, and the rights of said minor in said estate were established. *In re Gorkow's Estate,* 20 Wash. 563 (56 Pac. 385). Thereafter, and before final settlement of the estate of Rudolph Gorkow, deceased, in which the said firm of Nash & Nash were appearing as attorneys for Martha Schultheis, as guardian of the said child, Martha Schultheis, as such guardian, on January 23, 1900, filed a motion in the superior court of Spokane county in the estate of Rudolph Gorkow, deceased, asking the court to remove Nash & Nash as attorneys of record, and to substitute in their stead Herman & Kleber, attorneys. This motion was based upon an affidavit of Martha Schultheis charging Nash & Nash with attempting to supplant her as guardian of her ward, and of having wrongfully obtained an order of the court appointing another guardian in her stead, and also with misrepresenting to her the amount of money collected by them from said estate, and failing to account therefor. This motion came on for hearing and was by the court denied. Subsequently, on March 7, 1900, Martha Schultheis, as guardian, etc., filed a petition in the same court and cause alleging the same matters contained in the affidavit above named, and also that said Nash & Nash have been fully paid for all their services as attorneys for the petitioner and have appropriated to their own use some $1,300 over and above the fees due them, which sum they neglect and refuse to account for. The petition prayed that citation issue requiring Nash & Nash to appear and answer the petition, and also that the court adjudge that appellants have been fully paid, and that, if not fully paid, the court make an order that the payment be made out of the estate

of Rudolph Gorkow, deceased; and also that the court make an order directing Nash & Nash to pay to the guardian the sum of $1,300, and also make an order substituting Herman & Kleber as attorneys for said guardian, instead of Nash & Nash, and for other relief. Nash & Nash thereafter appeared and moved the court to quash the citation and strike the petition from the files, because the court was without jurisdiction, and because the controversy had previously been adjudicated and determined by the court. This motion was denied by the court, and Nash & Nash given until two o'clock in the afternoon of the same day to file an answer. No written answer was filed to the said petition. Nash & Nash appeared and orally claimed $10,-000 still due them from the petitioner as fees under the said contract. Thereupon the cause proceeded to trial, over the objection of counsel for Nash & Nash, on the question of the value of the legal services rendered. The court at this trial very properly refused to enter into a reconsideration of the matters heard in the first motion to remove Nash & Nash as attorneys of record upon the ground of bad faith alleged therein, but proceeded to determine whether Nash & Nash had been fully paid for their services; and evidence was heard as to the amount collected by them, and as to the reasonable value of the services rendered. Counsel for Nash & Nash during the trial offered in evidence the contract above referred to. This evidence was rejected by the court for the reason, as stated by the judge at the time, that the rights of the parties under the contract were not proper to be considered in this proceeding. Upon the evidence introduced, the court found that Nash & Nash had been fully paid for the reasonable value of the services rendered; that they had in their possession $1,300, belonging to the estate of the minor ward, in excess of fees due; and made an order

removing Nash & Nash as attorneys for the estate of said ward, and substituting Herman & Kleber as attorneys of record in said estate, and requiring the payment of this $1,300 to the guardian. Appeal is taken to this court from these orders.

Section 4769, Bal. Code, provides as follows:

"The attorney in an action or special proceeding may be changed at any time before judgment or final determination as follows: . . . 2. Upon the order of the court, or a judge thereof, on the application of the client, or for other sufficient cause; but no such change can be made until the charges of such attorney have been paid by the party asking such change to be made."

Under this provision of the statute it is clear that the court may remove an attorney in a cause, and substitute another, at any time before final judgment, upon application of the client to the court therefor, provided the charges of such attorney have been first paid. The court may, for cause, also make such order. In this case the lower court proceeded upon the theory that there was no cause shown in the petition, but that the client was entitled to the removal, as a matter of course, if the charges of the attorney had been paid as alleged; and this was the only issue before the court. No special method of notice is required in order to give the court jurisdiction of matters of this kind. "As a general rule it would seem that a motion is the proper form of application for a substitution of attorneys." 20 Enc. Pl. & Pr., p. 1014. The notice in this case was issued by citation. There can be no valid objection to this form of notice. The attorney was entitled to reasonable notice of the application. Whether it was the form here adopted, or some other, is immaterial, so long as reasonable notice was given.

2. At the trial the court declined to receive the contract in evidence upon the ground stated that the contract was

not proper to be considered in this proceeding. If the court had jurisdiction to determine the amount of compensation due the attorney, it certainly had authority to consider all the evidence necessary to determine such compensation. The statute above quoted gives the court power to remove the attorney from the probate proceeding before final determination, on the application of the client, and limits this authority only by the provision that the charges of the attorney shall first be paid. The court proceeded in this case to determine what, if anything, was due from the client to the attorneys. Evidence was offered and received as to the reasonable value of the services, and of the amount collected by the attorneys. If the court had jurisdiction to determine this question by inquiring into the reasonable value of the services, no good reason can be urged why the court should not determine the amount of fees due under the contract, if any existed. If the contract offered in evidence was a valid contract, as between the attorney and the client in relation to the amount of fees to be paid and received, certainly the court could not disregard that contract, and reward the attorneys by the rule of *quantum meruit*, and also leave the question of compensation under the contract to be determined in another action. A number of authorities are cited here to the effect that a guardian cannot by his general contract bind the estate of his ward, as follows: Schouler, Domestic Relations (4th ed.), § 344; *In re Flinn*, 31 N. J. Eq. 640; *Reading v. Wilson*, 38 N. J. Eq. 446; *Rollins v. Marsh*, 128 Mass. 116; *Cole v. Superior Court*, 63 Cal. 86 (49 Am. Rep. 78).

These authorities, however, hold that the guardian is nevertheless personally liable. They do not seem to us to be in point upon the question presented here. Martha Schultheis was the mother. She was also appointed gen-

eral guardian of her ward by the superior court of Lincoln county, and as such guardian she is authorized by law, and it is made her duty, to manage the estate for the best interests of her ward; "to pay all just debts due from such ward out of the estate in his hands and to collect all debts due such ward, and in case of doubtful debts to compound the same, and to appear for and defend, or cause to be defended, all suits against such ward." § 6405, Bal. Code. "Guardians, by virtue of their office as such, shall be allowed in all cases to prosecute and defend for their wards." § 6402, Bal. Code. The power to prosecute and defend suits fairly includes the power to make such reasonable contracts in regard thereto as may be necessary to conduct or defend the same, and includes the power to employ attorneys therein. There is nothing on the face of the contract in question to show that it is unreasonable, or that any fraud or undue advantage was exercised in obtaining the same.

In the case of *Taylor v. Bemiss,* 110 U. S. 42 (3 Sup. Ct. 441), where the validity of a contract arose upon an agreement similar to the one in question here, the rule is laid down that, while contracts for contingent fees are attended with suspicion, they are not void, "and where it can be shown that they are obtained from the suitor by any undue influence of the attorney over the client, or by any fraud or imposition, or that the compensation is clearly excessive, so as to amount to extortion, the court will in a proper case protect the party aggrieved." *In re Hynes,* 105 N. Y. 560 (12 N. E. 60), where a contract was entered into by the general guardian of two minor children wherein the guardian contracted for herself and the children and agreed to pay to the attorney a sum of money equal to one-third of the value of all property recovered

and restored to said guardian and her children, the court said:

"There can be no doubt of the authority of a guardian in socage to make a contract such as this. . . . . The right to the possession of the real estate of the ward carries with it a corresponding duty to obtain such possession, and, if wrongfully withheld, the guardian should sue for it. In imposing this duty upon the guardian the law necessarily gives to him the right to employ counsel, and, of course, to make a contract for his compensation."

See, also, *Jeffries v. Mutual Life Ins. Co.,* 110 U. S. 305 (4 Sup. Ct. 8); Weeks, Attorneys (2d ed.), § 350 *et seq.;* 3 Am. & Eng. Enc. Law (2d ed.), p. 440. It follows, therefore, since the contract appeared valid upon its face, and since the parties had power to make it, the court below could not disregard it, and, in violation of its terms, compensate the attorneys by the rule of *quantum meruit.* If they were entitled to be paid a reasonable fee, which had been agreed upon, that fee should be determined by the terms of the contract and paid, before the court, in the absence of a showing for cause, could remove them as attorneys for the guardian. *Payette v. Willis,* 23 Wash. 299 (63 Pac. 254).

The cause will be reversed and remanded to the lower court, with instructions to permit appellants to file an answer to the petition, if they desire to do so, and thereupon to determine what compensation appellants are entitled to under the contract; and, after deducting the amount already received, require the payment of any balance due the attorneys, if any there be; or, if counsel have received more than the court shall find they are entitled to under the contract, that an order be made requiring the return of the excess to the respondent.

REAVIS, C. J., and FULLERTON, ANDERS, DUNBAR WHITE and HADLEY, JJ., concur.