[No. 30694.　*En Banc.*　August 4, 1949.]

THE STATE OF WASHINGTON, *Plaintiff*, v. BABE MOORE, *Appellant*, J. P. TONKOFF, *Respondent and Cross-appellant.*[1]

SIMPSON, J., dissents.

[1]Reported in 208 P. (2d) 1207.

*Chavelle & Chavelle*, for appellant.

*J. P. Tonkoff* (of *Tonkoff & Holst*), for respondent and cross-appellant.

STEINERT, J.—During the pendency of a criminal action, the defendant filed a motion, captioned in that cause, for an order allowing her to substitute in place of her attorney of record other attorneys whom she had latterly retained to represent her in the further progress of the action. Defendant's original attorney thereupon filed a petition, captioned in the same cause, for an order fixing and allowing the amount of fees due him for services theretofore rendered to defendant and requiring payment thereof by her before allowance of the requested substitution. Upon a hearing of both applications, the court made findings and conclusions determining and awarding to the petitioning attorney the amount of allowable fees and thereupon entered judgment against the defendant in that amount. Defendant appealed from each and every part of the judgment and all rulings adverse to her. The petitioning attorney cross-appealed from the judgment in so far as it failed to award him a greater amount. For convenience, we shall hereinafter refer to the defendant as appellant and to the attorney petitioner as respondent.

The facts pertinent to this controversy are as follows: Prior to March 8, 1948, appellant, Babe Moore, alias Barbara Ward, had been charged by information in Franklin county, Washington, with the crime of maintaining a house of prostitution in Pasco. The crime so charged constitutes a misdemeanor. The information was later amended to include an additional charge of accepting the earnings of prostitutes, which is a felony. About the same time, six other persons, inmates of appellant's establishment, were separately charged with the crime of practicing prostitution or that of being in a house of prostitution, each of these offenses constituting a misdemeanor. In connection with these criminal

causes, a civil action was also instituted by the prosecuting attorney for Franklin county demanding abatement of appellant's premises as a declared nuisance.

Respondent, J. P. Tonkoff, is a practicing attorney at law, residing in Yakima, Washington. On or about March 8, 1948, respondent was employed by appellant to represent and defend her in the criminal and civil actions in which she and her property were directly involved and also to represent and defend the parties charged in the other six criminal cases, all pending in Franklin county, in which latter cases appellant was also indirectly concerned.

Respondent entered upon his employment and in course thereof made at least ten trips to Pasco. He first secured a reduction in the amounts of bail fixed for the various defendants, who were then in jail, and thereafter arranged for the posting of bail bonds whereby he procured their release from custody. He appeared in court on numerous occasions, arguing motions, demurrers, and other applications. He was able to secure a series of continuances and was successful in preventing the immediate padlocking of appellant's premises, and in securing an order allowing her to continue legitimate operation thereof for a specified time as a hotel or rooming house. He also spent considerable time preparing for the trial of the various cases.

Realizing the seriousness of the felony count in the information against appellant, respondent endeavored to effect a full settlement of the criminal charges in which she was directly involved. With this in mind, he interviewed the prosecuting attorney, suggesting that he would recommend to the appellant that she plead guilty to the charge of operating a house of prostitution, which is a misdemeanor, and pay the maximum fine of five hundred dollars, if the felony charge were dismissed. The prosecuting attorney indicated that he would be willing to recommend to the court such a disposition of the criminal case against appellant. Respondent had several conferences with appellant, urging her to accept his advice, ratify the offer, and conform to the proposed terms. Appellant, however, was unwilling to do this,

and in consequence became much dissatisfied with respondent's services, and finally engaged Mr. Cornelius C. Chavelle, a practicing attorney residing in Seattle, to represent her in the pending litigation.

In the meantime, the criminal action against appellant and the abatement proceeding had been set for trial on May 28th. Appellant failed to appear, however, and respondent endeavored to have the cases continued, urging as his reason therefor the fact that Mr. Chavelle had been engaged to replace him as defense counsel in these proceedings. The court granted a continuance to June 7th as to the criminal action, but refused continuance of the abatement proceedings. Respondent thereupon endeavored to withdraw from the latter case, but the court would not permit him to do so. As a consequence, respondent was required to enter upon the trial of the abatement complaint without the presence of his client. Mr. Chavelle had not yet taken over the case, inasmuch as the matter of substitution of attorneys still remained to be effected. He did, however, endeavor by long distance telephone to procure a postponement of the abatement hearing, but was unsuccessful in his effort.

On June 7th the criminal charges against appellant came on for trial before a jury which had been called for that purpose. Mr. Chavelle appeared, intending to represent appellant at the trial. It was necessary, first, however, to procure a substitution of attorneys. Mr. Chavelle filed his motion in that behalf, and, respondent having in the meantime filed his petition with reference to fees, both applications were heard by the trial court at the same time, upon the testimony of the two parties here involved. It was established by the evidence that appellant desired a substitution of attorneys, that Mr. Chavelle was present and ready to be substituted so as immediately to proceed with the trial of the criminal action, and that respondent was willing to withdraw from the case upon payment of his attorney's fee. With respect to his fee, respondent testified that in his opinion the value of the services rendered by him for appellant in all pending matters was $2,000, of which he

hàd received $500, leaving a balance of $1,500 still owing, payment of which he was insisting upon as a condition precedent to the substitution of attorneys.

At the conclusion of the evidence, the judge announced that he would allow respondent a fee of $1,500, less a credit of $500 already paid, leaving a balance of $1,000. Thereupon the following occurred:

"MR. TONKOFF: Is your client willing to pay that? MR. CHAVELLE: She has no funds now. MR. TONKOFF: I will prepare the judgment. THE COURT: The Court will direct her [appellant] to pay that before the substitution is made. MRS. WARD [appellant]: No, I can't pay it. THE COURT: On her statement that she is not in a position to do so, due to the fact that substitute counsel is prepared to go ahead with the trial, and the jury is here, I will enter judgment against her in your [respondent's] favor. *On this basis the substitution will be permitted.*" (Italics ours.)

From the facts formally found and entered, the court concluded that respondent should be awarded the sum of $1,500 for his services, subject to a credit of $500, and

"That the defendant [appellant] should be required to pay said sum of $1000.00 prior to the substitution of Chavelle & Chavelle as attorneys in lieu of Tonkoff & Holst, and particularly J. P. Tonkoff. That defendant having stated she could not pay Tonkoff & Holst Plaintiffs [respondent] are entitled to judgment of $1000.00."

Upon the findings and conclusions thus made and entered, the court granted respondent judgment in the sum of one thousand dollars, and both parties have appealed, as hereinbefore explained.

Appellant states categorically in her brief that she is not questioning the *reasonableness* of the attorney's fee allowed by the trial court, but is objecting solely to the procedure adopted and followed by that court and is questioning the authority of the court summarily to fix an attorney's fee. Accordingly, her assignments of error are only (1) that the trial court erred in summarily fixing the attorney's fee, and (2) that the court erred in entering a judgment for such fee.

We do not believe that, under the record herein, appellant is in a position to raise or urge the questions suggested by her assignments of error. The findings of fact, made and entered by the trial court, recite, in the introductory paragraph, that the matter before the court came on for hearing on *appellant's* motion for substitution of attorneys. The court then made a specific finding that *appellant*

". . . has moved for a substitution of attorneys in the above captioned matter *and that attorney's fees for said J. P. Tonkoff be fixed prior to the substitution of the firm of Chavelle & Chavelle.*" (Italics ours.)

No error is assigned upon any of the trial court's findings of fact.

█ We have repeatedly held that where no error is assigned upon the findings of fact, this court will accept the findings as the established facts in the case. *LeCocq Motors v. Whatcom County*, 4 Wn. (2d) 601, 104 P. (2d) 475; *Hansen v. Lindell*, 14 Wn. (2d) 643, 129 P. (2d) 234; *Brydges v. Millionair Club*, 15 Wn. (2d) 714, 132 P. (2d) 188.

Under that rule, it is an established fact in this case that appellant herself sought not only a substitution of attorneys but also asked that *an attorney's fee for respondent be fixed prior to such substitution.* Having invoked the very action which the court took, appellant should not now be heard to complain of it.

However, since that point was not raised or discussed by either of the parties upon the appeal, and, further, because the real question here involved is an important one to both lawyers and litigants, we shall assume, merely for the purposes of this case, that appellant is entitled to urge the errors assigned by her, and we therefore proceed to consider the case upon its merits as presented in the briefs.

The statutory law pertinent to this controversy is found in Laws of Washington Territory, 1863, p. 403 *et seq.*, being "An Act In Relation To Attorneys and Counsellors At Law." Section 9 of that act, appearing later as § 3283, Code of 1881, was carried forward into Rem. Rev. Stat., § 133 [P.P.C. § 273-55], and now reads:

"The attorney in an action or special proceeding may be changed at any time before judgment or final determination as follows: —

"1. Upon his own consent, filed with the clerk or entered upon the minutes; or

"2. Upon the order of the court, or a judge thereof, on the application of the client, or for other sufficient cause; but no such change can be made until the charges of such attorney have been paid by the party asking such change to be made."

It will be noted that the statute makes provision for change of attorneys in two ways: (1) by consent of the attorney of record, and (2) by order of court on the application of the client. It will be further noted, however, that, in the latter instance, payment of the attorney's charges is a condition precedent to the change. This is in accord with the universal rule, even in jurisdictions where the client has the right to change his attorney of record at any stage of the proceedings, whether with or without cause.

In 5 Am. Jur. 284, Attorneys At Law, § 44, it is said:

"One has, subject to exception in a case where the attorney has an interest in the subject-matter of the suit, the right to change his attorney of record at any stage of the cause, and substitute another, *provided he secures the consent of the court*, which must be obtained by a proper proceeding for the purpose, as by motion, *and provided further that he pays the attorney or secures to him the fees he has already earned and to which he is rightfully entitled*." (Italics ours.)

In 7 C. J. S. 954, Attorney and Client, § 122, we find this statement:

"If, however, the attorney has a lien *or a claim for fees or expenses*, and the client brings no charges of misconduct against the attorney, but merely elects to exercise his absolute right to have a substitution, the court, before granting the substitution, may and should impose such terms and conditions as justice requires to protect the attorney. Under such circumstances, it is usually regarded as necessary and proper that the substitution be conditioned on some adequate and proper provision for the payment or securing of the displaced attorney's fees or expenses." (Italics ours.)

In Weeks, Attorneys At Law (2d ed.), pp. 515, 517, § 250, appear the following statements on the subject:

"A party has no right arbitrarily to change his attorney without paying the costs earned; and the original attorney is not bound to consent to a substitution, or deliver papers upon which he has a lien, until the amount of his just demands is ascertained by a court or referee and paid. . . .

"Although a party in an action may have no right to change his attorney without leave of the court, yet the court will usually grant leave on the request of the party, but not without consulting the rights of the attorney, and will not allow the change until the just claims of the latter are discharged or secured."

■ Whatever latitude may, in this jurisdiction or elsewhere, for one reason or another, be allowed a client in changing attorneys during the pendency of an action in which the attorney of record is functioning, our statute, quoted above, is positive and mandatory in its requirement that no such change can be made until the charges of the attorney of record have been paid by the client.

Two cases involving almost the identical question with which we are here concerned have been decided by this court, and in both of them the court approved the procedure followed in the case at bar and gave full effect to the statute as written.

In *Schultheis v. Nash*, 27 Wash. 250, 67 Pac. 707, a client filed a motion, and subsequently a petition, in a pending cause, asking, *inter alia*, that the court remove the attorneys of record, substituting others instead, and adjudge that the original attorneys had been fully paid. In response to an order to show cause, the attorneys against whom the petition had been filed appeared and moved to quash the citation on the ground that the court was without jurisdiction. Their motion was denied, and they then claimed orally that a large balance of fees was still owing to them. Over the objection of the attorneys, the cause proceeded to trial on the question of the value of their legal services. The attorneys offered in evidence their contract of employment by the client, on a contingent basis. The court rejected this evi-

dence, adjudged that the attorneys had been paid in full, and entered an order of substitution of attorneys. Thereupon the original attorneys of record appealed.

This court, after quoting the above statute, said:

"Under this provision of the statute it is clear that the court may remove an attorney in a cause, and substitute another, at any time before final judgment, upon application of the client to the court therefor, provided the charges of such attorney have been first paid. The court may, for cause, also make such order. In this case the lower court proceeded upon the theory that there was no cause shown in the petition, but that the client was entitled to the removal, as a matter of course, if the charges of the attorney had been paid as alleged; and this was the only issue before the court. No special method of notice is required in order to give the court jurisdiction of matters of this kind. 'As a general rule it would seem that a motion is the proper form of application for a substitution of attorneys.' 20 Enc. Pl. & Pr., p. 1014."

In reversing the trial court for excluding the contract of employment, the court, in the cited case, said:

"The statute above quoted gives the court power to remove the attorney from the probate proceeding before final determination, on the application of the client, and limits this authority only by the provision that the charges of the attorney shall first be paid. The court proceeded in this case to determine what, if anything, was due from the client to the attorneys. Evidence was offered and received as to the reasonable value of the services, and of the amount collected by the attorneys. If the court had jurisdiction to determine this question by inquiring into the reasonable value of the services, no good reason can be urged why the court should not determine the amount of fees due under the contract, if any existed."

In the more recent case of *Hudson v. Brown*, 179 Wash. 32, 35 P. (2d) 756, a client brought summary proceedings, under Rem. Rev. Stat., § 133 [P.P.C. § 273-55], *et seq.*, for substitution of attorneys and for the return of certain papers and documents held by attorneys who originally represented them. Answering the petition, the attorneys alleged that the petitioners were indebted to them for professional

services rendered and disbursements made, not only in the captioned case, but also in five other designated cases, and they prayed that a time be fixed when a hearing might be had to determine the compensation due them. A hearing was had, and at the conclusion of the evidence, the attorneys waived their right to be paid in full as a condition precedent to the substitution of attorneys, and consented that an order of substitution should be made upon the payment of only two thousand dollars and the entry of a judgment for the balance. The trial court made findings and conclusions and entered judgment accordingly. The clients thereupon appealed.

In its opinion, this court set forth the question to be decided, in the following language:

"We agree with respondent that the questions involved are whether it was proper for the court to determine the compensation due respondents for fees and disbursements, and having done so, whether it was proper to order part of the amount paid and enter judgment for the balance."

Adverting to the rule announced in *Westerlund v. Peterson,* 157 Minn. 379, 197 N. W. 110, to the effect that a client may waive his action at law and proceed summarily against the attorney, the court said:

"That is what was done in the instant case. The clients proceeded summarily against their attorneys, upon which summary proceeding the attorneys had the right to have their attorneys' fees adjudicated for any balance due them, under all the well considered cases."

■ We have that exact situation in the case at bar. Appellant, the client, proceeded summarily against her attorney of record to have him removed by substitution of another attorney in his place. In fact, as shown above by the trial court's finding, her motion for substitution of attorneys, when submitted to the court, either included, or was accompanied by, a motion that respondent's attorney's fees be fixed prior to the substitution. In any event, since appellant elected to proceed summarily against her attorney, seeking his displacement, the attorney had the right, under the authority of the *Hudson* case, *supra,* and "all the well

considered cases," to have his attorney's fees adjudicated for any balance due him.

Since appellant desired an immediate substitution, in order that she might be represented by her new attorney at the trial which was scheduled to take place immediately, it was mandatory upon her first to pay her retiring attorney's fees and charges. To do that, it was necessary to have the court determine the reasonable value of the attorney's services and fix the allowable fee therefor. This, the trial court did. As shown above, the court found and declared that the attorney should be paid the sum of one thousand dollars prior to any substitution, but, when appellant and her counsel stated that she was unable to pay the money, directed that a judgment in that amount should be entered instead. Appellant accepted this benefit, to which she would not have been otherwise entitled, and thereupon proceeded with the trial of the pending criminal action under the supervision of her substituted attorney.

The respondent attorney undoubtedly would have had the right to demand and insist upon *payment,* rather than *judgment,* but he is not complaining of the court's action in that respect. So far as appellant is concerned, however, she is not in position to complain that the court entered a money judgment instead of requiring immediate payment in cash.

Appellant's argument is that the superior court has no authority summarily to determine or fix the amount of an attorney's fee, upon substitution of counsel, except in proceedings where the attorney claims a lien upon the client's money or papers, as provided in Rem. Rev. Stat., § 138.

It is true that this section does authorize the trial court in such instances summarily to inquire into the facts on which the claim of lien is founded, and to determine the issue thereby raised. It is true, also, that in the instant case no claim of attorney's lien is involved, but only a claim for attorney's fees. But it does not follow that, in a proceeding for substitution of attorneys, the court may not take steps to determine the amount of fees due the retiring attorney except in a case where such attorney has a lien for his fees.

In view of what we have previously said with respect to the procedure here followed, and the authorities in support thereof, we deem it unnecessary further to discuss appellant's contention, other than to say that Rem. Rev. Stat., § 138, is not applicable to, nor does it prescribe the controlling and exclusive remedy in, a situation where the client himself institutes a summary proceeding for substitution of attorneys, and the attorney of record in turn seeks to have his fees adjudicated before the allowance of such substitution.

Upon respondent's cross-appeal, the only question involved relates to the reasonable value of his services. The trial court heard and fully considered the evidence upon that issue and fixed the amount of allowable fees at fifteen hundred dollars. That was a matter peculiarly within the province of the trial court, and we are constrained to accept its finding in that respect as correct and proper.

The judgment is affirmed upon both the appeal and the cross-appeal, without costs to either party.

JEFFERS, C. J., BEALS, ROBINSON, MALLERY, SCHWELLENBACH, HILL, and GRADY, JJ., concur.

SIMPSON, J. (dissenting)—This case was first argued November 18, 1948, and assigned for an opinion. The judge to whom the case was assigned failed to write the opinion, and it was assigned to me in December, 1948. I wrote an opinion which did not prevail. The cause was then heard En Banc March 10, 1949, and assigned to another judge, who wrote an opinion to which I dissented. That judge then wrote another opinion, to which I dissented. The case was then, for a reason unknown to me, assigned June 18, 1949, to the present writer of the majority opinion.

The majority opinion seems to hold that because the appellant asked the court to fix the fees of Mr. Tonkoff that she cannot now contend that the trial court was in error in entering judgment against her. It must be pointed out that appellant never asked or consented that a judgment be entered against her. All she asked was that she be advised

of the amount due her attorney. That was a far cry from consenting to the entry of a judgment.

We should ascertain whether or not the statute which governs here is constitutional, and, if so, its intent and purpose, and then apply it to the facts of the case before us.

Clearly, the statute does not give valid authority to the court to render summary judgment such as entered in the present action. In order to express my views, I feel it necessary to set out Rem. Rev. Stat., §§ 133, 134, 136 and 138 [P.P.C. §§ 273-55, -57, -61, -65], all contained in the Laws of 1863, pp. 405-406:

"§ 133. Change of attorneys. The attorney in an action or special proceeding may be changed at any time before judgment or final determination as follows: — . . . .

"(2) Upon the order of the court, or a judge thereof, on the application of the client, or for other sufficient cause; but no such change can be made until the charges of such attorney have been paid by the party asking such change to be made."

"§ 134. Notice of change and substitution. When an attorney is changed, as provided in the last section, written notice of the change, and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party; until then, he shall be bound to recognize the former attorney."

"§ 136. Lien of attorneys. An attorney has a lien for his compensation, whether specially agreed upon or implied, as hereinafter provided,—

"1. Upon the papers of his client, which have come into his possession in the course of his professional employment;

"2. Upon money in his hands belonging to his client;

"3. Upon money in the hands of the adverse party in an action or proceeding, in which the attorney was employed, from the time of giving notice of the lien to that party;

"4. Upon a judgment to the extent of the value of any services performed by him in the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed, and date of filing notice."

"§ 138. Proceedings where lien exists. If, however, the attorney claim a lien upon the money or papers, under the provisions of this chapter, the court or judge may, —

"1. Impose as a condition of making the order that the client give security, in the form and amount to be directed, to satisfy the lien, when determined in an action;

"2. Summarily to inquire into the facts on which the claim of a lien is founded, and determine the same; or

"3. To refer it, and upon the report·determine the same as in other cases."

In any event, the statute is not sufficient to authorize the court to do other than foreclose a lien upon the papers of an attorney's client which have come into his possession in the course of his employment, money in his hands belonging to his client, money in the hands of the adverse party in an action or proceeding in which the attorney was employed, or upon a judgment to the extent of any services performed by him in the action. I reiterate, the act does not provide for the entry of a summary judgment such as rendered in the present action.

Art. II, § 19 of our constitution provides:

"BILL TO CONTAIN ONE SUBJECT.—No bill shall embrace more than one subject, and that shall be expressed in the title."

"CONSTITUTION MANDATORY.—The provisions of this constitution are mandatory, unless by express words they are declared to be otherwise." Art. I, § 29, Washington Constitution.

The title of the act (Laws of 1863, p. 403), in so far as it is applicable here, reads:

"Section  9. Attorney, how changed.
     "     10. Notice of change.
     "     11. Notice to appoint attorneys.
     "     12. Lien of attorneys.
     "     13. Proceedings to compel delivery of papers.
     "     14. Proceedings when attorney claims lien."

Nowhere in the title does the legislature indicate that summary judgment may be entered in what is clearly an action at law for the recovery of attorney's fees. All the statute permits is "summarily to inquire into the facts on

which the claim of a *lien* is founded, and determine the same."

The restricted title of the act is not sufficient to authorize the procedure followed in this case. That is, it does not mention procedure such as was had here. Two recent pronouncements of this court applying Art. II, § 19 of our state constitution bear out my contention.

The first is *State ex rel. Washington Toll Bridge Authority v. Yelle*, 32 Wn. (2d) 13, 200 P. (2d) 467. In that case it was decided that the restricted title to chapter 173, p. 654, Laws of 1937 (Rem. Rev. Stat., Vol. 7A, § 6524-1 [P.P.C. § 632-1] *et seq.*), reading as follows:

"An Act relating to toll bridges; creating the Washington Toll Bridge Authority and providing for certain officers as members thereof; relating to the powers and duties of the Washington Toll Bridge Authority and certain officers; providing for the investigation, examination, survey, recognizance [reconnaissance], construction and operation of toll bridges; providing for the examination, survey, reconnaissance, construction and operation of toll tunnels; providing for the acquisition of property for toll tunnels, their approaches, and establishment; providing for the issuance and sale of bonds and the conditions, terms and redemption thereof; providing for the deposit and use of certain funds and revenues; defining terms; repealing acts and parts of acts in conflict; providing for constitutionality; and declaring an emergency",

was insufficient to allow the toll bridge authority to purchase, build, or operate ferries. In passing, it was stated:

"We are further of the opinion that the term 'ferry connections,' as used in the title of the 1945 act, is not sufficient to put a reasonably intelligent person on notice that the powers of the Washington toll bridge authority have purportedly become so enlarged, beyond the limited powers which it formerly possessed, under the 1937 act, that it can now acquire and operate a general water transportation system of the magnitude outlined in its recent resolution."

The second case is that of *Gilman v. State Tax Commission*, 32 Wn. (2d) 480, 202 P. (2d) 443. In passing upon the issues in that case, this court held that the title to Initiative No. 169, reading as follows:

"An Act providing for the payment of additional compensation to veterans of World War II; establishing administrative procedures; authorizing the issuance and sale of state bonds and allocating the revenues thereof to a compensation fund; providing for the retirement of the bonds through the proceeds of a tobacco tax; making an appropriation and providing penalties",

was not sufficiently broad to make the bonds provided for in the act a general obligation of the state of Washington.

In view of these holdings, how can it be said that either the title or the body of the act of 1863 (Rem. Rev. Stat., §§ 133, 134, 136, and 138) are sufficient to authorize the trial court to enter a summary judgment for attorney's fees.

The act, as construed by the majority, violates our constitutional provision, Art. I, § 21, which states that "the right of trial by jury shall remain inviolate . . ."

The majority opinion gives to attorneys rights and privileges accorded to no other body of our people, whether they be farmers, laborers, merchants, bankers, manufacturers, doctors, or clergymen.