[No. 2245-2.    Division Two.    August 11, 1976.]

ROGERS WALLA WALLA, INC., *Plaintiff*, v. CHARLES H. BALLARD, ET AL, *Appellants*, RIDDELL, WILLIAMS, IVIE & BULLITT, *Respondent*.

*Perry J. Robinson,* for appellants.

*Stimson Bullitt* and *Riddell, Williams, Ivie, Bullitt & Walkinshaw,* for respondent.

PEARSON, J.—Charles H. and Eileen M. Ballard, husband and wife, appeal from a judgment against them in favor of the law firm of Riddell, Williams, Ivie & Bullitt (law firm) for attorneys' fees in the amount of $17,548. These

issues are raised: (1) Did the court properly condition a substitution of counsel by the Ballards after oral decision against them by a judge pro tempore in an action by Rogers Walla Walla, Inc., on their payment of attorneys' fees to their discharged law firm? (2) Was there consent of the necessary parties to the authority of the judge pro tempore to fix the amount of the fee due the law firm? (3) Was the amount of the fee reasonable? (4) Is the statute requiring payment of fees before substitution of counsel, RCW 2.44.040, constitutional? We affirm on all issues.

This fee dispute arose after trial of an action by Rogers Walla Walla, Inc. (Rogers), against the Ballards, the details of which are not material herein and are recited in *Rogers Walla Walla, Inc. v. Ballard*, 16 Wn. App. 81, 553 P.2d 1372 (1976), a companion opinion. Rogers filed its complaint early in January 1973, seeking specific performance of a 1964 agreement by its then vice-president, Charles Ballard, to resell stock purchased from Rogers, should he cease employment with the company within 10 years. Charles Ballard engaged the law firm to defend the action, and was put in touch with one of its senior partners, Donald S. Voorhees.[1] As the matter initially seemed an uncomplicated defense of a contract action, Mr. Voorhees told Mr. Ballard the legal fees would range between $3,000 and $5,000. They orally agreed that fees would be charged on an hourly basis and that periodic bills would be sent for informational purposes. Ballard was to pay the ongoing costs involved, but the law firm agreed to accept payment for its fees upon "completion of the matter." To Mr. Voorhees, this meant trial or settlement; to Mr. Ballard it meant "the matter would be fully and completely concluded" between the litigants. The law firm agreed to take the case on credit because it was expected that even if the case were lost and Ballards had to give up the stock, Rogers would remit $10,000 to more than cover the fee. Apparently Mr. Voorhees' usual hourly rate of $60 was never discussed, nor

[1] Donald S. Voorhees is now Judge Voorhees of the United States District Court for Western Washington, sworn in July 15, 1974.

was the fee arrangement reduced to writing. In May 1973, Ballard learned that defense of the suit could cost up to $7,000, following a conversation with Mr. Voorhees.

On July 25, 1973, Rogers filed an amended complaint which put Charles Ballard's conduct as former chief executive officer in issue. The Ballards responded, through Mr. Voorhees, with a counterclaim for $30,000 back salary allegedly due Mr. Ballard. With the interjection of these new issues, in Mr. Voorhees' words, "the time [hours of legal work] just exploded." Several bills were sent to the Ballards in 1973, and they promptly paid the costs as billed, voicing no objection to the mounting fees.

By April of 1974, trial of the suit was upcoming and Mr. Voorhees strongly urged the Ballards to offer to settle the case. In so doing, Mr. Voorhees was motivated, first, by the desire to achieve an advantageous settlement for the Ballards in view of the facts as developed in extensive pretrial preparation, and, second, by the possibility that the Ballards would not be able to pay the higher fees entailed by a trial. As of that date, legal research, depositions of Mr. Ballard and Rogers officers in Eastern Washington and Oregon, motions, interrogatories, and conversations with Mr. Ballard about the facts, had engendered legal fees of about $11,000. Mr. Voorhees reminded the Ballards of this and told them a trial, involving further preparation, would cost an additional $6,000 to $7,000; he stated further that the firm would expect payment promptly after trial. The Ballards refused to seek a settlement and assured Mr. Voorhees the fees would be timely paid.

The case went to trial on May 3, 1974, before Cornelius C. Chavelle, a judge pro tempore and a former Judge of the King County Superior Court. Both Rogers and the Ballards had stipulated to a trial before Judge Chavelle pursuant to RCW 2.08.180:

A case in the superior court of any county may be tried by a judge pro tempore, who must be a member of the bar, agreed upon in writing by the parties litigant, or their attorneys of record, approved by the court, and sworn to try the case; and his action in the trial of such

cause shall have the same effect as if he were a judge of such court. A judge pro tempore shall, before entering upon his duties in any cause, take and subscribe the [proper] oath or affirmation: . . .

The statute repeats, virtually verbatim, the conditions for authority of a judge pro tempore contained in article 4, section 7 of the state constitution.

The trial lasted 5 days. On May 14, 1974, Judge Chavelle announced his oral decision in favor of Rogers, requiring the Ballards to return their Rogers stock upon payment by Rogers of $10,000 plus interest.

On May 19, 1974, Mr. Ballard sent a letter to Mr. Voorhees, which concluded: "Thank you once again for the counsel and guidance you have provided. We are proud to have you represent us." Subsequently, the Ballards apparently changed their minds, because on June 21 Mr. Ballard notified the law firm that he was discharging them from employment as attorneys.

On June 26, 1974, the parties in Rogers Walla Walla, Inc. v. Ballard appeared before Judge Pro Tempore Chavelle for the scheduled presentation of findings and conclusions. The Ballards had just retained a new attorney, Jack P. Scholfield, who knew little of the case. The Ballards sought to have Mr. Scholfield substituted as counsel for Mr. Voorhees, who agreed to the substitution and urged the court to continue the case so that new counsel could become familiar with it. However, Mr. Voorhees asked the court to condition the substitution of counsel upon payment in full of the legal fees owed his law firm by the Ballards. The court entered an order continuing the presentation of findings and conclusions to July 17, 1974, and allowing the substitution of counsel upon payment of all legal fees by that date.

When court reconvened on July 17, the fees had not been paid. The Ballards disputed the claimed amount, $17,748. They declined to follow a procedure proposed by the law firm, that the fee dispute be arbitrated under the supervision of the Washington State Bar Association.

Consequently, the court continued the matter to July 18

for the purpose of receiving testimony on the reasonableness of the claimed fee and fixing a fee to be paid incident to substitution of counsel. At the July 18 hearing, the law firm called Evan L. Schwab, the attorney who had opposed Mr. Voorhees from the outset of Rogers' action against the Ballards, and Robert J. Williams, Rogers' director and general counsel in Walla Walla, who had followed the litigation closely. Both testified that Mr. Voorhees' legal work in the case had been superb, that if anything his hourly rate of $60 was low for a lawyer of his skill and experience, and that a fair fee to charge the Ballards could have been $25,000, in view of the time and effort involved. As a comparison, Mr. Schwab's law firm had run up 360 hours of time, worth $17,040 chargeable to Rogers, through the end of trial. The time records of Riddell, Williams, Ivie & Bullitt were introduced in support of the fee. Mr. Ballard's opposing testimony was based primarily on his own time records of visits to and telephone conversations with Mr. Voorhees, court appearances, and attendance at depositions. He attempted to estimate the amount of time spent by Mr. Voorhees in writing letters, preparing depositions, and other activities. He estimated that the fees should be $10,593. Admittedly, he had no direct knowledge of time spent by Mr. Voorhees or others in research, drafting pleadings, abstracting and analyzing transcripts of depositions, or in preparing for depositions or trial. He never objected to any of the bills sent him, including the April 1974 bill, prior to trial, of over $11,000.

The court found that $17,548[2] was a fair amount for the attorneys' fees and entered judgment in that amount in satisfaction of the condition to substitution of counsel.

We first take up the Ballards' argument that the judge pro tempore was without authority to determine the fees due the law firm. Ballards rely on RCW 2.08.180 and the constitutional provision previously adverted to, and argue that,

---

[2]The record does not reveal the reason for the discrepancy between the amount of judgment and the amount claimed by the law firm, $17,748.

while they consented to have Judge Chavelle preside over Rogers Walla Walla, Inc. v. Ballard, neither they nor the law firm consented to have their fee dispute determined by him. In support of their position, Ballards cite *National Bank v. McCrillis*, 15 Wn.2d 345, 130 P.2d 901, 144 A.L.R. 1197 (1942).

The *National Bank v. McCrillis* case involved a petition by an incompetent to annul his marriage. A default judgment was entered by a judge pro tempore against the defendant wife. However, the judge pro tempore had not been appointed or taken his oath, nor had written consent to his appointment been given. There was only oral consent by the plaintiff and the prosecuting attorney, who was not a party. The court noted that an early decision, *State ex rel. Cougill v. Sachs*, 3 Wash. 691, 29 P. 446 (1892), determined that consent to the appointment by the "parties litigant" can be oral, but even that was lacking. *McCrillis* held that the term "parties litigant" means the real parties in interest, there the plaintiff and defendant, and that the method of appointment of a judge pro tem is a jurisdictional requirement that can be raised at any time.

We will initially assume, for the sake of discussion, that the "parties litigant" in the fee dispute are the Ballards and the law firm of Riddell, Williams, Ivie & Bullitt, and that the written consent of Rogers and the Ballards to appointment of Judge Chavelle for trial on the merits did not include resolution of the fee dispute between Ballards and their lawyers. Nevertheless, we are convinced that Judge Chavelle presided over the fee hearing with consent of the disputing parties.

■■ There is no question the law firm orally consented to the judge pro tempore's authority by asking him to hold a hearing on the fee issue. However, the Ballards ask us to ignore the interpretation of *State ex rel. Cougill v. Sachs, supra,* that oral consent can suffice under the statute. In view of the fact that the Washington Supreme Court reiterated the possibility of oral consent in *National Bank v. McCrillis, supra* at 356, we deem ourselves bound to

accept the law firm's consent. As for the Ballards, the record discloses that they withheld consent to the *procedure* of the court setting the fee as a condition to the substitution of counsel; however, we are satisfied that they intended no objection to the judge pro tem's *authority* to settle the fee dispute. Indeed, Mr. Scholfield signed a separate stipulation on behalf of the Ballards to the appointment of Judge Chavelle, which was filed July 18, 1974—the date of the hearing on the sole issue of attorneys' fees. The record is clear that Mr. Scholfield did represent the Ballards in the fee hearing with the court's permission. The Ballards cannot now ask us to ignore their written consent to have Judge Chavelle conduct the fee hearing, particularly when their resistance to the hearing was based on the proposed procedure, rather than to the judge pro tempore's authority to act in that capacity. *See National Bank v. McCrillis, supra.*

Furthermore, we do not believe in the validity of the assumption urged by the Ballards: that Rogers' and the Ballards' written consent to have Judge Chavelle try the case was not inclusive of consent of the "parties litigant" in the subsequent fee dispute. A fee dispute between a party and his attorney is ancillary to the unfinished litigation on the merits. *National Equip. Rental Ltd. v. Mercury Typesetting Co.*, 323 F. 2d 784 (2d Cir. 1963); *Gardner v. Helvering*, 88 F. 2d 746 (D.C. Cir. 1936). The rule of *National Bank v. McCrillis, supra,* obviously applies when one party sues another and one of them fails to consent to the appointment of the judge; we hold that it does not preclude resolution of a fee dispute arising between one litigant who has already given consent and his attorney. In that ancillary context, the judge pro tempore has power to resolve the dispute if the attorney adds his consent to that of the litigants.

If Judge Chavelle had authority to settle the fee dispute, the Ballards insist that he could not proceed to fix the fees as a condition to substitution in the face of their agreement with the law firm that payment was not due until the lawsuit was concluded.

■ Judgment for the law firm's fees as a condition to substitution was entered by Judge Chavelle pursuant to RCW 2.44.040:

The attorney in an action or special proceeding, may be changed at any time before judgment or final determination as follows:

(1) Upon his own consent, filed with the clerk or entered upon the minutes; or

(2) Upon the order of the court, or a judge thereof, on the application of the client, or for other sufficient cause; but no such change can be made until the charges of such attorney have been paid by the party asking such change to be made.

Judge Chavelle's setting of a hearing to determine the amount of disputed fees was pursuant to *State v. Moore*, 34 Wn.2d 351, 208 P.2d 1207 (1949), involving the antecedent statute in the same language, Rem. Rev. Stat., § 133, in which the court stated at page 358:

Whatever latitude may, . . . be allowed a client in changing attorneys during the pendency of an action in which the attorney of record is functioning, our statute, quoted above, is positive and mandatory in its requirement that no such change can be made until the charges of the attorney of record have been paid by the client.

The court approved entry of a judgment for the amount due, in lieu of payment.

It is obvious that the law firm could perform no more of the work for which it was hired when the Ballards discharged the trial attorney. In seeking a substitution of counsel, they were subject to the rule that their former counsel must first be paid. We think the discharge and motion for substitution had the manifest effect of accelerating the due date for payment. The action was not yet fully completed, but the law firm had every right to insist upon prompt payment of its fees. To allow a substitution of counsel without payment of or judgment for the fees would be to fly in the face of the statute, which is mandatory. *State v. Moore, supra.*

■ The court set the amount of the fees apparently on

a quantum meruit basis, *i.e.*, on the basis of billable hours times the rate of the law firm partner or employee doing the work. We believe that both the method of setting the fees and the amount awarded were reasonable. The Ballards argue that the court erred in ignoring two factors: the results at trial and their ability to pay. While an attorney has a moral obligation to consider the client's ability to pay the estimated fee when he is asked to take a case,[3] the Ballards have cited us to no authority specifically requiring the court to consider that factor in setting a fee. Here, too, the Ballards insisted on taking the case to trial despite a strong recommendation of settlement by their experienced counsel, and despite his admonition as to the prospect of much higher fees for trial. Having decided to press on to trial in the face of the recommendation to settle the case to achieve the best monetary result, it is illogical for the Ballards to complain that the court should have reduced the fees because they are high and the case was lost. The following pronouncement disposes of this assignment of error:

> We take it to be the rule, then, that, where compensation of an attorney is fixed by agreement between attorney and client and is to be paid in full upon completion of the work or undertaking for which the attorney has been engaged, if the attorney is discharged or prevented by the client from completing the work or undertaking, the measure of the attorney's damage is not the fee agreed upon for completion of the task, but reasonable compensation for the professional services actually rendered.

(Citation omitted.) *Kimball v. PUD 1*, 64 Wn.2d 252, 258, 391 P.2d 205 (1964). The fee set by the court is supported by the record and quantum meruit was properly applied.

Finally, the Ballards contend that RCW 2.44.040 is unconstitutional for three reasons. By forcing them to pay their former attorney before substituting for him, it (1) deprives them of a right to trial by jury on the amount of a reasonable fee, in violation of article 1, section 21 of the

---

[3] (CPR) EC 2-17.

Washington Constitution; (2) grants to attorneys a right not given to any other class of ·employee—the right to summary judgment for fees upon discharge—in violation of the Washington equal protection clause, article 1, section 12; and (3) deprives them of their right to be represented by counsel of their own choice (constitutional section not specified).

These arguments are not properly before us. The constitutionality of the statute was not challenged in the trial court. The general rule is that theories raised for the first time on appeal will not be considered. *Matthias v. Lehn & Fink Prods. Corp.*, 70 Wn.2d 541, 424 P.2d 284 (1967). Although this rule has carefully limited exceptions, ordinarily in criminal cases—*State v. McHenry*, 13 Wn. App. 421, 535 P.2d 843 (1975); *see Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 465 P.2d 657 (1970); *Esmieu v. Schrag*, 15 Wn. App. 260, 548 P.2d 581 (1976)—the kind of "manifest error affecting a constitutional right" that will invoke the exception is not raised here. RAP 2.5(a)(3). It is not at all clear that RCW 2.44.040 is manifestly erroneous, especially in view of past approval of the statute in *e.g., Schultheis v. Nash*, 27 Wash. 250, 67 P. 707 (1902); *Hudson v. Brown*, 179 Wash. 32, 35 P.2d 756 (1934); and in *State v. Moore, supra*, over the lone dissent of Judge Simpson expressly raising constitutional objections.

Moreover, without exhausting all possible reasons, we think these constitutional arguments are easily answered. *State v. Moore, supra*, held that when the client seeks a summary substitution of counsel, the court likewise has the power to summarily enter judgment for reasonable fees, whether or not counsel has filed a lien upon his client's money or papers. The court, in the interests of the orderly administration of justice, must be able to assure a swift, orderly substitution of counsel, in part so that third parties such as the other litigant and his counsel are not obligated to stand idly by while the full panoply of a jury trial unfolds. We agree with the rule that a client seeking a summary change of counsel under such a statute, submits

himself to the jurisdiction of the court and waives any right to a jury trial on the amount of fees. *Yuengling v. Betz*, 58 App. Div. 8, 68 N.Y.S. 574 (1901).

Regarding the equal protection argument, we believe that attorneys are unlike other classes of employees. An attorney who is discharged during the course of litigation, *i.e.*, before completing his contractual duty, must turn his work product and knowledge over to the successor lawyer so that the action can be finished for the client. This is not true of other kinds of employees who, if discharged without cause, need not turn over the fruits of their labor to their employer or successor in performance of the task. Thus, RCW 2.44.040 insures a prompt, orderly way for the court to supervise the exchange of attorney's work product for payment of proper compensation, without undue interruption of the litigation.

No authority whatever has been supplied us for the proposition that RCW 2.44.040 unconstitutionally permits the court to deny a litigant his right to counsel of his own choosing. We decline to discuss the issue.[4] *Daggett v. Tiffany*, 2 Wn. App. 309, 467 P.2d 629 (1970).

One detail requires our attention. Following oral argument, the law firm submitted an unsolicited letter setting forth previously unargued reasons for upholding the constitutionality of RCW 2.44.040. Although the practice of submitting additional argument after oral argument is disapproved and is contrary to court rule (CAROA 41(1); RAP 10.1, 10.8), we granted leave to the Ballards to respond in kind. In so doing, they moved for terms. Terms are hereby awarded in defendants' favor in the amount of $300.

The judgment is affirmed.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied September 30, 1976.

Review denied by Supreme Court February 23, 1977.

---

[4] In any event the statutory procedures utilized did not in fact deny defendants the right to counsel of their own choosing.