[No. C.D. 6558.   En Banc.   June 2, 1983.]

*In the Matter of the Disciplinary Proceeding Against* ANTON J. MILLER, *an Attorney at Law.*

*Robert T. Farrell* and *Robert D. Welden,* for Bar Association.

*Anton J. Miller,* pro se.

PER CURIAM.—This is an attorney disciplinary proceeding, referred to the court upon the refusal by the attorney to accept reprimand and censure from the Washington State Bar Association. The respondent, Anton J. Miller, was admitted to practice on September 22, 1969. On a previous occasion, Miller was reprimanded for entering an unauthorized settlement in a proceeding involving a real estate transaction. *In re Miller*, 95 Wn.2d 453, 625 P.2d 701 (1981).

On July 31, 1981, the Washington State Bar Association filed a formal complaint against Miller charging him with three counts of attorney misconduct. Count 1 alleged unfitness to practice law in violation of DRA 1.1(k). Count 2 alleged violations of DRA 1.1(c) and (i), CPR DR 2–110(B)(4), 5–101(A), 6–101(A)(3), and 7–101(A)(1), (2), and (3) in connection with Miller's representation of George E. Moser before the Board of Industrial Insurance Appeals. Count 3 alleged violations of DRA 1.1(c) and (i) and CPR DR 1–102(A)(4) in connection with Miller's dealings with two Nevada gambling casinos.

On April 5, 1982, a hearing panel officer of the bar association's Disciplinary Board entered findings and recommendations regarding the complaint against Miller. The hearing panel officer recommended count 1 of the complaint be dismissed. The hearing panel officer recommended, however, that Miller be censured for his conduct in the representation of Mr. Moser, and that he be suspended for 3 months for his conduct in dealing with the Nevada gambling casinos.

Initially, in its order of July 6, 1982, the Disciplinary Board adopted the hearing panel officer's recommendations on counts 1 and 2 against Miller. The Board dismissed count 3, however, reasoning that Miller's action to stop payment on checks used for gambling did not constitute dishonesty, fraud, deceit, or misrepresentation. The vote on

modification was 3 to 2, the nonlawyer members of the Disciplinary Board voting against the modification.

Counsel for the Washington State Bar Association requested the Disciplinary Board to reconsider its decision dismissing count 3 against Miller. On July 30, 1982, the Disciplinary Board unanimously voted to modify its decision and on August 6, 1982, ordered that Miller be reprimanded for acting to cancel the cashier's checks. Miller refused to accept censure and reprimand from the Washington State Bar Association.

Count 2 of the bar association's complaint arose from the representation by Miller of George E. Moser before the Board of Industrial Insurance Appeals. Moser was discontinued from permanent disability pension payments and sought reinstatement on the pension rolls and an award of back payments. Miller agreed to represent Mr. Moser on a contingency basis, "25% of any back or past due L & I comp. recovered, and 10% of any comp. accruing in [the] future which is received."

After a hearing the Board of Industrial Insurance Appeals awarded Moser approximately $20,000 in back payments and reinstated him on the disability pension rolls. When it became apparent, however, that Moser would refuse to pay Miller the percentages agreed upon, Miller attempted to have the payments to Moser diverted directly to his law office. Miller prepared a letter to the Department of Labor and Industries, which he unsuccessfully attempted to convince Moser to sign, directing the Department that "all checks, drafts, warrants . . . etc., sent to me by the State of Washington . . . be sent to me in care of my attorney, Anton J. Miller . . ." Miller also filed complaints for permanent and temporary injunctions directing the Department of Labor and Industries to forward Moser's disability pension payments directly to Miller.

By his own admission (Report of Proceedings, at 20) Miller was discharged by Moser as his attorney no later than January 23. Nevertheless, Miller continued as attorney of record for Moser even though further proceedings

were continuing in the action between Moser and the Department of Labor and Industries (Report of Proceedings, at 23–25). It is the position of Miller that he could remain as attorney of record, not representing Moser, his client, but rather representing his own (Miller's) interests.

> I can't say it verbatim, but it's something like I probably said that Mr. Moser has indicated that I am not to represent him, but I don't—and I don't purport to do so, but I have a vested interest in this matter and I'm not willing to let his claim go down the tube because then I won't be paid for my very substantial services in this case.

Report of Proceedings, at 25.

During the pendency of Miller's actions for injunctive relief from Moser's refusal to pay for Miller's services and following his discharge by Moser, Miller continued to represent Moser regarding his permanent disability pension. The Department of Labor and Industries appealed the Board of Industrial Insurance Appeals decision in Pacific County Superior Court. The Department also filed a motion to stay the Board's order pending resolution of the appeal. Miller did not oppose the Department's application for a stay, nor did Miller affirmatively seek to compel payment from the Department to Mr. Moser.

Miller apparently is of the opinion he can continue to be the attorney of record but not be the representative of his client. The testimony on this point is illuminating as to Miller's attitude:

> Q (By Mr. Welden) [attorney for Washington State Bar Association] Exhibit 19 [response by Moser to Miller's complaint for declaratory relief] reads, does it not, in its second paragraph, "The above–referenced Complaint for Declaratory Relief by Mr. Miller, alleged by himself to be the attorney for the above–named defendant," and then continues in the same paragraph, "let the record show that Anton J. Miller is not and will not be the defendant's attorney of record in the defendant's Department of Labor and Industries cause which is at present before this court."
>
> A Let me clarify that a little bit, too. That one that said I represent him was certainly not true. There was a

conflict of interest. He did discharge me. Being the attorney of record and that sort of thing is true and I was and have always remained such.

Q If you had been discharged, how was it you were still the attorney of record?

A Just was.

Q You had not filed a withdrawal?

A No. And even if he filed a discharge, it wouldn't, so far as I know, render me not his attorney, at least of record.

Q Can you explain that, please?

A Yes. Once an attorney appears for somebody—and this is as a matter of law more than of fact—once he duly appears for somebody and undertakes to be his representative of record, he remains his representative until he either withdraws—well, he doesn't remain his representative, he remains the attorney of record until he withdraws or the court enters an Order of Substitution or something, as far as I understand.

Q Did you endeavor to either withdraw or have the court enter an Order of Substitution?

A No. You used the word "withdraw." I didn't submit a Notice of Withdrawal. I didn't comply with Rule 71. I didn't submit anything for the purpose of filing that said I was withdrawing, whether I complied with Rule 71 in any other manner.

Report of Proceedings, at 37–38. This position is unacceptable. RCW 2.44.040 requires that an attorney remain the attorney of record in a client's case until the attorney's charges for services have been paid. The requirements of RCW 2.44.040 are mandatory so that no change of attorney of record can be made without court approval where the attorney has not been paid. *Haller v. Wallis,* 89 Wn.2d 539, 548, 573 P.2d 1302 (1978); *Rogers Walla Walla, Inc. v. Ballard,* 16 Wn. App. 81, 99, 553 P.2d 1372 (1976). *Accord, State v. Moore,* 34 Wn.2d 351, 357, 208 P.2d 1207 (1949). *But see* CPR DR 2-110(B), effective May 14, 1982, 97 Wn.2d 1115-16. Nevertheless, the attorneys must continue to represent their clients zealously and competently. CPR DR 7-101; CPR DR 6-101. The duty to represent a client competently includes the duty not to neglect a legal matter

entrusted to the attorney. CPR DR 6–101(A)(3).

Thus, Miller had a choice: either properly represent Moser or withdraw as attorney of record. *See* CR 71. Miller did neither. Rather than withdraw as Moser's attorney of record, Miller simply ceased active representation in Moser's case before the Department of Labor and Industries. For this he is deserving of censure. *See In re Fraser,* 83 Wn.2d 884, 523 P.2d 921 (1974).

Count 3 of the bar association's complaint arises from the gambling activities of Miller at two Nevada casinos. On October 28, 1980, Miller purchased a $500 cashier's check from the Seattle–First National Bank (Seafirst) in Raymond, Washington. Miller used the check to purchase gambling chips at the Carson Nugget Casino in Carson City, Nevada. After he lost the chips at a gambling table Miller returned to Raymond and requested that Seafirst stop payment on the cashier's check. Apparently, Miller intended from the beginning to stop payment on the cashier's check, but he did not inform the casino of this intention.

Seafirst refused to accede to Miller's request to stop payment on the cashier's check. Miller then brought a replevin action against Seafirst to recover the check. Miller prevailed in the replevin action and received the canceled check from Seafirst.

On at least one other occasion Miller repeated his gambling escapade. He purchased another cashier's check, again used the check to purchase gambling chips, again lost the chips, and again sought to have payment on the check stopped when he returned to Raymond. The record is unclear as to his success in stopping payment on the second cashier's check.

We concur with the view of bar counsel that Miller was involved in a scheme to defraud. In an attempted scholarly justification of his actions, Miller cites both the ancient English Statute of Anne (9 Anne, ch. 14, § 1 (1710)) and recent Nevada cases (*Sea Air Support, Inc. v. Herrmann,* 96 Nev. 574, 613 P.2d 413 (1980); *Sandler v. Eighth*

*Judicial Dist. Court,* 96 Nev. 622, 614 P.2d 10 (1980)).
Miller claims that since the law does not allow a gambling
casino to enforce a gambling debt his actions do not violate
DRA 1.1(i) and CPR DR 1–102(A)(4).

CPR DR 1–102(A)(4) provides:

A lawyer shall not:

. . .

(4) Engage in conduct involving dishonesty, fraud,
deceit, or misrepresentation.

DRA 1.1(i) provides that violations of the Code of Profes-
sional Responsibility subject an attorney to disciplinary
sanctions. We find Miller's position to be utterly without
ethical justification and completely reprehensible. Accord-
ing to the findings of the hearing panel officer, Miller had
no intention of honoring the cashier's checks if he lost the
gambling chips he received for them. In a word Miller was
involved in a scam. As bar counsel aptly stated, Miller
seems to regard the law as a "bag of tricks" which he may
use at his pleasure *to deceive and mislead others.* The
license to practice law is not granted by this court for that
purpose. The actions of Miller are an egregious violation of
the Code of Professional Responsibility.

Finally, we consider the argument by Miller that the
Disciplinary Board had no authority to reconsider its order
of July 6, 1982, dismissing count 3. We find it to be without
merit. The procedures leading to the action taken by the
Board were with the full knowledge of Miller. The Board
acted within its authority. As to the assertion by Miller
that his rights of "due process, equal protection and . . .
double jeopardy under the State and Federal Constitu-
tions" were violated, no authority is cited. The Board did
not act improperly nor were the constitutional rights of
Miller violated.

Respondent Anton J. Miller is censured for failing to
either competently represent Moser or withdraw from his
case, and he is reprimanded for his conduct in attempting
to deceive and defraud the Nevada gambling casinos. Costs

in the amount of $792.02 are assessed against the respondent.

Further reconsideration denied September 1, 1983.