[No. C.D. 5678.   En Banc.   June 2, 1983.]

*In the Matter of the Disciplinary Proceeding
Against* JAMES V. GRUBB, *an
Attorney at Law.*

*Robert T. Farrell,* for Bar Association.

*James V. Grubb,* pro se, and *Peter D. Francis* (of *Francis, Lopez & Ackerman*), for respondent.

DORE, J.—James V. Grubb was admitted to the practice of law in the state of Washington on February 18, 1965. His only previous violation was a letter of censure he received on May 23, 1978, based upon a violation of CPR DR 6–101(A)(3) which prohibits an attorney from neglecting a

legal matter.

On July 28, 1980, Grubb took possession of a ring as security for fees to represent a criminal defendant, Ernest Knapp. The ring was given to Grubb by Jacqueline Frederickson, a friend of Knapp's. At the time Grubb was given the ring, Frederickson also gave him a copy of a document entitled "Estimated retail replacement value" for the ring which stated that it had an estimated market value of $24,230. Grubb accepted the ring as security for payment of a $500 nonrefundable retainer to visit Knapp in jail.

After being contacted by Frederickson, Grubb went to the Montesano jail and conferred with Knapp, agreeing at that time to represent him. A trial date conflict and Knapp's apparent desire to save funds through representation by a public defender then caused Grubb to withdraw from representation of Knapp.

On receipt of the ring, Grubb initially placed it in a locked box in his office. During the next month, he took the ring home to show his wife and sometimes carried it with him while thinking about having it appraised or put in a safe–deposit box. Grubb testified that on August 13, 1980 he put the ring in his pocket when he left work at the end of the day, visited a tavern, went home overnight, returned downtown in the morning for a deposition, then discovered he had lost the ring.

Frederickson subsequently requested that Grubb return the ring in exchange for the $500 which represented the nonrefundable retainer. Instead of telling Frederickson of the ring's loss, he told her he had been informed that Knapp had a claim on the ring and he needed to speak to him about the matter. Grubb made a trip to see Knapp but was unable to speak with him as he had been transferred to another facility. Frederickson subsequently married Knapp and wrote to Grubb on April 10, 1981 requesting the return of the ring. Grubb received the letter, but did not respond. On a number of other occasions, Frederickson tried to communicate by telephone with Grubb but her calls were never put through by the receptionist. Grubb admittedly was

made aware of at least some of the calls but did not return any of them.

On August 10, 1981, respondent advised the Washington State Bar Association why he had not informed Frederickson of the loss of the ring. This information apparently was not passed along to Frederickson or her husband, who did not learn of the loss until shortly before the time of the disciplinary hearing on April 30, 1983.

Grubb testified that the reason he did not inform the Knapps of the ring's disappearance was that he had an insurance policy which he believed covered the loss and he did not want to jeopardize or waive any rights under the policy. He thought a disclosure to the Knapps might constitute a violation of the policy's cooperation provision. Although Grubb's recall of events is somewhat incomplete, the hearing officer, who had the benefit of listening to Grubb's testimony, found his testimony credible.

The hearing officer concluded in his findings that Grubb's conduct in failing to expeditiously put his client's trust property in a safe–deposit box or other place of safekeeping constituted a violation of CPR DR 9–102(B)(2).[1] He also found that Grubb's conduct in failing to notify either Frederickson or Knapp of the loss of the ring, and by his silence leading or attempting to lead them to believe it was still in his possession, constituted a violation of CPR DR 1–102(A)(4).[2] Based on Grubb's violation of the rules governing the maintenance of trust property, the hearing officer recommended a censure for the negligent keeping of the ring and its loss. Grubb voluntarily accepted the censure. The hearing officer also recommended a 60–day suspension from the practice of law because of Grubb's failure to inform Frederickson and/or Knapp that the ring was

---

[1]CPR DR 9–102(B)(2) provides that a lawyer shall "[i]dentify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable".

[2]CPR DR 1–102(A)(4) provides that a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation".

missing. Counsel for Grubb advised this court that a suit had been initiated to collect damages for the lost ring under the respondent's malpractice policy, and that all necessary parties had been joined in that lawsuit. Grubb's attorney also advised that Grubb had offered a substantial settlement to the Knapps, which they refused.

■ Justice Stafford, speaking for the court in *In re Greenlee*, 98 Wn.2d 786, 787–88, 658 P.2d 1 (1983), stated:

> Generally speaking, the purpose of attorney discipline is to protect the public from future misconduct of attorneys, and to preserve public confidence in the legal system. *In re Zderic*, 92 Wn.2d 777, 600 P.2d 1297 (1979). In this regard several considerations have been deemed important: (1) the seriousness and circumstances of the offense; (2) the avoidance of repetition; (3) the deterrent effect upon other attorneys; (4) assurance that those who seek legal services will be insulated from unprofessional conduct; and finally, (5) the maintaining of respect for the legal profession. *In re Zderic*, at 787.

In the case of *In re Salvesen*, 94 Wn.2d 73, 76–79, 614 P.2d 1264 (1980), we enumerated a number of aggravating or mitigating factors to be considered in setting an appropriate sanction, including: (1) the attorney's background and legal career, (2) whether clients have suffered injuries, (3) the degree of cooperation with the bar in its investigation, (4) the attorney's acknowledgment of wrongdoing, and (5) the effect of allegations of wrongdoing on the attorney's reputation in the community.

A review of the record indicates that Grubb's failure to inform Frederickson and/or Knapp of the loss of the ring did not affect any existing property rights of either of them. There was no pending action affected; no statute of limitation was involved; no real estate was placed in jeopardy, nor was any legal right jeopardized or diminished. The record also indicates that Mr. Grubb is a single practitioner and that a 2–month suspension will have a devastating effect upon his practice.

The hearing officer found that Grubb was contrite and that the likelihood of recurrence was "quite slim". The only

remaining concern is the quantum of punishment necessary to assure the public that professional misconduct will not be lightly regarded. We believe a reprimand will satisfy this test. A 60–day suspension would be extremely harsh and out of proportion to the severity of the offense. Grubb's record before the Washington State Bar Association now stands at two censures and one reprimand. We trust he has learned from his mistakes, and will not repeat them.

WILLIAMS, C.J., and ROSELLINI, UTTER, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.

BRACHTENBACH, J.—I dissent. Reduced to the simple facts, an attorney took a ring, which was accompanied by a written appraisal indicating a value of $24,230, as security for a nonrefundable $500 fee. He did not give a receipt. Shortly thereafter he was notified that he was not retained and would be paid $500 cash for return of the security ring. Almost 2 years later he still had not told his client that he had lost the ring 3 weeks after he received it. He failed to respond to a written request for its return. He failed to return phone calls about its return.

While he may have sometimes kept it in a place of safekeeping, he also took it home on more than one occasion, carried it in his pocket while traveling about, going to a tavern and sleeping on his davenport. That hardly comports with compliance with CPR DR 9–102(B)(2) which requires identification, labeling and placing in a safe-deposit or other place of safekeeping.

His understanding of professional responsibility is best illustrated by the fact that he notified his insurance carrier of the loss but not his client. He even testified that he probably put off going to see the former client in jail be cause "he doesn't have any use for the property essentially." He advised the bar association that he was starting a declaratory judgment action against his insurance carrier which he never did. His final lame excuse was that he expected to be contacted by his former client's lawyer

about the ring.

Such gross misconduct merits more than a reprimand. I would adopt the 60–day suspension recommended by the hearing officer and adopted unanimously by the Disciplinary Board.

STAFFORD, J., concurs with BRACHTENBACH, J.