98 P.3d 444 (2004)
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Mark J. DYNAN, Attorney at Law.
No. 12161-3.
Supreme Court of Washington, En Banc.
Argued March 9, 2004.
Decided September 30, 2004.
As Amended on Denial of Reconsideration November 30, 2004.
*446 Douglas M. Fryer, Anthony Lawrence Butler, Washington State Bar, Seattle, for Petitioner.
Edward Sydney Winskill, Davies Pearson PC, Tacoma, for Respondent.
OWENS, J.
Allstate Insurance Company (Allstate) retained Mark J. Dynan in three different lawsuits to represent people insured by the company. Dynan requested attorney fees in these suits under RCW 4.84.250 and/or Mandatory Arbitration Rules (MAR) 7.3. Dynan submitted declarations for attorney fees and copies of bills sent to Allstate in support of his motions for attorney fees. The declarations stated that the bills attached were true and correct billings for Dynan's time and services. However, the attached bills were not those sent to Allstate. Dynan's office whited out the actual hourly rate, $100-$120, and replaced it with a reasonable attorney fee, $150 per hour, before he submitted the bills to the court. Dynan's knowing alteration of the bills and submission of false declarations to the court constitute falsification and misrepresentation of evidence. The presumptive *447 sanction for false swearing is disbarment. However, in light of the lack of actual harm resulting from Dynan's actions, the addition of a mitigating factor, and a proportionality analysis, we depart from the Disciplinary Board's (Board) recommendation of a nine-month suspension and hold that Dynan is suspended for six months.

STANDARD OF REVIEW
In disciplinary proceedings, the Supreme Court has "plenary authority" and the court's discretion is limited only by the evidence before it. In re Disciplinary Proceeding Against Whitt, 149 Wash.2d 707, 716, 72 P.3d 173 (2003). The court will treat unchallenged findings of fact as verities on appeal and a challenged finding of fact will not be overturned if it is supported by a clear preponderance of the evidence. See In re Disciplinary Proceeding Against Kuvara, 149 Wash.2d 237, 246, 66 P.3d 1057 (2003); In re Disciplinary Proceeding Against Anschell, 149 Wash.2d 484, 503, 69 P.3d 844 (2003); State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994); Rules for Lawyer Discipline (RLD) 4.11(b) (stating disciplinary council must prove misconduct "by a clear preponderance of the evidence").[1] A clear preponderance of the evidence is an intermediate standard between simple preponderance in a civil suit and reasonable doubt in a criminal action. In re Disciplinary Proceeding Against Halverson, 140 Wash.2d 475, 486, 998 P.2d 833 (2000). The court reviews conclusions of law de novo and will uphold those conclusions if they are supported by the findings of fact. Whitt, 149 Wash.2d at 716-17, 72 P.3d 173; In re Disciplinary Proceeding Against Boelter, 139 Wash.2d 81, 90, 985 P.2d 328 (1999).

FACTS
Although Dynan assigns error to the Board's modification of the hearing officer's findings of fact, Dynan specifically challenges only the Board's modified finding of fact 12, which is supported by a clear preponderance of the evidence. See Resp't's Br. at 4, 16.[2] Therefore, we adopt the Board's modified findings of fact.[3] Although the Board's modified findings of fact include findings on six cases, the Washington State Bar Association (WSBA) filed complaints regarding Dynan's conduct in only three Pierce County Superior Court cases: Le v. Hedberg, No. 97-2-12023-9 (Hedberg); Han v. Allstate Insurance Co., No. 95-2-06251-8, 1997 WL 453651 (Han); and Walls v. Walls, No. 95-2-11451-8, 1998 WL 349872 (Walls). See Record Before the Disciplinary Board at 831-37 (Third Amended Formal Complaint); Disciplinary Board Decision Papers [hereinafter Decision Papers] at 8-10 (Disciplinary Board Order, Findings of Fact 34-50 (findings regarding three additional cases)). Similar conduct in the three additional cases supports a pattern of misconduct, which is an aggravating factor. See In re Disciplinary Proceeding Against Anschell, 141 Wash.2d 593, 615, 9 P.3d 193 (2000) (explaining how a pattern of misconduct may be established). However, it is unnecessary for us to consider these cases because Dynan's actions in Hedberg, Han, and Walls already constitute a pattern of misconduct. Therefore, our discussion will be limited to Hedberg, Han, and Walls. See infra note 24.
*448 Dynan, representing Allstate and Allstate insurees, submitted sworn declarations to the court in support of his motion for attorney fees in Hedberg, Han, and Walls pursuant to MAR 7.3 or RCW 4.84.250 between 1997 and 1999. Report of Proceedings (RP) (Dec. 5, 2001) at 33 (Han, MAR 7.3), 35 (Hedberg, RCW 4.84.250), 36-37 (Walls, RCW 4.84.250). All three declarations used similar language. In Hedberg the declaration stated "[a]ttached hereto as Tab No. 1 are true and correct billings for my time and services expended on this matter." Ex. 1. The declaration in Walls used identical language, substituting Tab No. 1 with Tab No. 3. Ex. 15. In Han two declarations were submitted. The first stated, "[a]ttached hereto are copies of the past bills sent to the insurance company." Ex. 5. The second stated, "[a]ttached hereto are true and correct copies of all billing charges." Ex. 8.[4] The billings attached to all of the above declarations were copies of the actual bills sent to Allstate with the original hourly billing rate, $100-$120, whited out and $150[5] typed in its place. See RP (Dec. 5, 2001) at 54-55 (Dynan admitting to the alterations).[6] Dynan also submitted billing statements using the $150 hourly billing rate to Paul Apple, his opposing counsel in Han and Hedberg. Ex. 1, 2, 11; RP (Dec. 4, 2001) at 21-25. Although the Board determined that Dynan knowingly filed the declarations and altered billings with the court, it also concluded that Dynan did not believe the actual fee amount was material to a reasonable attorney fee award and Dynan did not intend to deceive the court.[7]
No attorney fees were paid out in Hedberg and Walls because Hedberg settled and the attorney fee award in Walls was overturned on appeal. In Han, attorney fees were granted and the plaintiff paid approximately $3,449 more than Dynan's actual fees.[8] These higher fees were not recouped by Dynan, but were paid to Allstate.
Based on the above conduct, the WSBA filed complaints against Dynan regarding declarations and bill submissions made to the court in Hedberg, Han, and Walls. The WSBA accused Dynan of four counts of misconduct based on violations of Rules of Professional Conduct (RPC) 3.3(a)(1) and (4), 3.4(b), and 8.4(c) and (d). On December 4-5, 2001, hearing officer Gayle T. McElroy heard the case. McElroy determined that the WSBA had not proved the charges by a preponderance of the evidence, but found that Dynan's conduct was negligent and potentially could cause harm. Subsequently, she ordered Dynan censured. The WSBA appealed the hearing officer's decision and the Board disagreed with the hearing officer. The Board modified McElroy's findings of fact and conclusions of law and concluded that all four counts were proved by a preponderance *449 of the evidence. After conducting a proportionality analysis, the Board recommended a nine-month suspension. We depart from the Board and hold that the appropriate sanction is a six-month suspension.

ISSUES
1. Did the WSBA prove all four counts of misconduct based on the violation of RPC 3.3(a)(1) and (4), 3.4(b), and 8.4(c) and (d) by a preponderance of the evidence?
2. If the WSBA proved misconduct, is the appropriate sanction a nine-month suspension?

ANALYSIS
Our court has determined that the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) (ABA Standards) should guide our bar disciplinary cases. Halverson, 140 Wash.2d at 492, 998 P.2d 833. Under the ABA Standards, after misconduct is found the court performs a two prong analysis. Id. at 492-93, 998 P.2d 833. First, the court determines the presumptive sanction based on the ethical duty violated, the attorney's mental state, and the extent of actual or potential harm caused by the conduct. Id. The court then considers aggravating and mitigating factors, which may decrease or lengthen the presumptive sanction. Id. at 493, 998 P.2d 833; see ABA Standards stds. 9.22, .32. Finally, the court will adopt the Board's recommended sanction unless the sanction departs significantly from sanctions imposed in other cases or the Board was not unanimous in its decision. In re Disciplinary Proceeding Against Miller, 149 Wash.2d 262, 277-78, 285-86, 66 P.3d 1069 (2003).[9]

A. Ethical Violations/Misconduct
Dynan challenges the Board's conclusions of law finding him guilty of all four counts of misconduct, and argues the WSBA did not prove the misconduct by a clear preponderance of the evidence.[10] We uphold the Board's conclusions of law because they are supported by the Board's unchallenged, modified findings of fact, and these findings of fact do not support the hearing officer's conclusions of law.[11] Therefore, we determine the WSBA proved misconduct by a preponderance of the evidence.

1. CountI  RPC 3.3(a)(1)[12]
RPC 3.3(a)(1) states "[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal." The Board's modified findings of fact show Dynan knowingly submitted material and false declarations and attached billings in support of his motions for attorney's fees.[13] Therefore, the Board correctly concluded that Dynan's conduct constituted a violation of RPC 3.3(a)(1).

a. Materiality
Dynan argues that an attorney does not have to provide documentation of his actual fee rate to the court because the actual rate may not be the reasonable rate and is therefore not material to a determination of a reasonable fee award. Dynan further asserts *450 that an attorney's actual rate is not material to a fee award because the purpose of fee awards is to penalize the opposing party and this may be accomplished by a reasonable fee greater than the actual fee charged. Dynan relies on the lodestar method of calculating fees, the context of his fee arrangement, and the overall purpose of fee shifting statutes to support his "immaterial" argument.
We recognize there are instances where an attorney's actual fee may be less than a reasonable fee, that one purpose of fee shifting statutes is to penalize certain parties, and that the lodestar method may not specifically require an attorney to submit his actual billing rate.[14] However, Dynan's arguments focusing on the materiality of the undisclosed actual fee are inapposite because the real issue is whether statements Dynan submitted to the court (e.g., the declarations including a false rate) are material. Whether a false statement is material is a matter of law for this court, not Dynan, to decide. See RCW 9A.72.010(1) (defining materially false statements in the perjury context and stating that whether a statement is material is a matter of law for the court to determine); see also State v. Dial, 44 Wash.App. 11, 14, 720 P.2d 461 (1986) (stating in a perjury case that the materiality of a false statement is a matter of law). "Material facts are generally those facts upon which the outcome of the litigation depends in whole or in part." In re Disciplinary Proceeding Against Carmick, 146 Wash.2d 582, 600, 48 P.3d 311 (2002); see also RCW 9A.72.010(1) (defining a materially false statement in the perjury context as any false statement "which could have affected the course or outcome of the proceeding"). Therefore, if the submitted declarations stating a false rate would affect or determine the fee award, the declarations are material.
Judge Terry D. Sebring, the presiding judge in the Han case where fees were awarded, testified that typically when a lawyer wants a fee award that is higher than his actual fee the lawyer discloses this to the court. RP (Dec. 4, 2001) at 114-15, 119-20; see also RP (Dec. 4, 2001) at 56-57, 168 (two Washington lawyers testifying to this practice).[15] He testified that he assumed the rate in the billing submitted to the court was accurate, that changing the actual rate was inappropriate, and that factual misstatements are not acceptable. RP (Dec. 4, 2001) at 116, 119-21. Further, Judge Sebring awarded Allstate attorney fees based on the amount requested in the declaration, which used the false $150 hourly rate. See Ex. 8 (Dynan's declaration); Ex. 9 (award of attorney fees). Based on this evidence, we hold that the declaration Dynan submitted to the court was material to the determination of a fee award in Han, and the submitted declarations in Hedberg and Walls would have been material to the fee award if an award had been granted.

b. Falsity
Dynan parses out his declarations and argues that the declarations do not contain false statements because he stated only that the rates were reasonable, not true and correct, and the rates in the attachments are reasonable. We disagree with Dynan's attempt to deconstruct his declarations and instead interpret each declaration as a whole. It is reasonable for a judge to read a declaration stating "attached hereto ... are true and correct billings for my time and services expended on this matter," followed by a statement reciting the fee as reasonable, and assume that if the time and services are true and correct, the billing rate is as well.[16] Here that was not the case. Dynan concedes that he altered billing statements and attached *451 those statements to a declaration stating the billing as true and correct. Therefore the declaration was false.

2. Counts II and III  RPC 3.3(a)(4), 3.4(b)[17]
RPC 3.3(a)(4) forbids knowingly offering false evidence to a tribunal. RPC 3.4(b) forbids falsifying evidence in regard to fairness due an opposing party or opposing counsel. As discussed above, each declaration, read as a whole, states that the billings are true and correct even though the submitted billings were altered. By altering the actual bills and then submitting them to the court with a declaration stating the bills to be true and correct, Dynan falsified evidence and then offered this evidence to the court. Further, opposing attorney Paul Apple received a copy of Dynan's pleadings in Hedberg, which included Dynan's declaration and falsified, altered billings. RP (Dec. 4, 2001) at 21-25. As opposing counsel in Han, Apple also received a letter regarding Dynan's motion for attorney fees in Han that referenced an attached current billing statement, which reflected a $150 hourly rate instead of Dynan's actual rate. Ex. 11. The Board correctly concluded that these actions violated RPC 3.3(a)(4) and 3.4(b).

3. Count IV  RPC 8.4(c) and (d)[18]
RPC 8.4(c) states that "[i]t is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation." RPC 8.4(d) provides that "[i]t is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." The Board correctly determined that Dynan's knowing misrepresentation of his actual hourly rate violated these provisions.
To determine an RPC 8.4(c) violation, the court must decide "whether the attorney lied. No ethical duty could be plainer." In re Disciplinary Proceedings Against Dann, 136 Wash.2d 67, 77, 960 P.2d 416 (1998). Various explanations as to why lying occurred may mitigate the charge, but does not change the truth of the underlying charge. Id. Dynan has tried to explain why he altered bills and submitted them to the court, but his motivation is inapposite. Reading each declaration as a whole, with the attached billings, proves Dynan misrepresented the billings as true and correct and misled the court, violating RPC 8.4(c).
Under RPC 8.4(d), an attorney may prejudice the administration of justice if he engages in conduct in his official capacity or advocatory role that violates practice norms or engages in conduct that physically obstructs justice. In re Disciplinary Proceeding Against Curran, 115 Wash.2d 747, 764, 801 P.2d 962 (1990); Kuvara, 149 Wash.2d at 255-56, 66 P.3d 1057. Dynan argues that he did not prejudice the administration of justice because the court plays an active role in determining attorney fees and if the $150 hourly rate was not reasonable the court could reject it. He bases his arguments on the lodestar method of calculation and documentation required under that method.
Where a fee shifting statute does not specify how fees are to be calculated the lodestar method may be used. Brand v. Dep't of Labor & Indus., 139 Wash.2d 659, 666, 989 P.2d 1111 (1999); see also Mahler v. Szucs, 135 Wash.2d 398, 432-33, 957 P.2d 632, 966 P.2d 305 (1998) (suggesting use of lodestar method to calculate fee award pursuant to MAR 7.3). Under the lodestar method the court multiplies the number of hours expended by a reasonable rate to determine a reasonable fee. Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 597, 675 P.2d 193 (1983). The attorney must *452 inform the court of the number of hours worked, the type of work performed, and the category of the attorney performing the work. Id.
Although Bowers does not specifically state that the attorney must provide the court with his actual billing rate, several witnesses testified that during a fee award determination, it is the normal practice for an attorney to present his actual rate and then argue for a higher rate if the actual rate is not reasonable. RP (Dec. 4, 2001) at 56-57, 114-15, 119-20, 168. This practice allows the court to reach a reasonable attorney fee based on actual and true evidence, adjusting the rate for other variables. See Bowers, 100 Wash.2d at 597, 675 P.2d 193 (noting that the actual rate of billing may not be reasonable and may be adjusted based on several factors). Dynan, in his official capacity, violated practice norms by not providing the court with his actual rate. Further, even if the submitted rate was reasonable, Dynan's misrepresentations prejudiced the administration of justice by preventing the court from determining an attorney fee award based on true evidence.

B. Mental State
Since Dynan's misconduct, based on several ethical violations, was proved by a preponderance of the evidence, we must determine Dynan's mental state during commission of the violations.[19] A lawyer may act with intent, knowledge, or negligence. In re Disciplinary Proceeding Against McMullen, 127 Wash.2d 150, 169, 896 P.2d 1281 (1995); ABA Standards std. 3.0 & commentary at 25. We agree with the Board and hold Dynan acted with knowledge.
An attorney acts with knowledge if he acts with "`the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.'" McMullen, 127 Wash.2d at 169, 896 P.2d 1281 (quoting ABA Standards, Definitions at 7). Dynan argues that he acted only negligently by providing the court with motives for his actions. However, what Dynan fails to recognize is that even if the court concedes that he did not act with the objective of deceiving the court and unintentionally created ambiguity, this does not change his mental state while he executed his misconduct. Dynan was consciously aware that he was not providing the court with true evidence when he signed the declarations and submitted altered billings. Therefore, Dynan acted knowingly, not negligently.

C. Injury
An attorney's misconduct may cause injury if the conduct results in actual or potential harm to a client, the public, the legal system, or the legal profession. See ABA Standards std. 3.0, Definitions at 7 (defining actual and potential injury). Although an attorney award based on the $150 hourly rate may have been reasonable, in Han the court assumed the rate presented was accurate. RP (Dec. 4, 2001) at 120. The courts in Hedburg and Walls also may have assumed the accuracy of the rates. Had these courts been provided with truthful evidence, they may have determined that the fee award should be based on the actual billing rate instead of the submitted billing rate. An award based on the actual rate would have decreased Han's payment by approximately $3,449.[20] Although the Board determined Dynan's conduct caused actual harm to one party and potential harm to other parties, we agree with the hearing officer and determine that it is more appropriate to categorize the harm to Han, Hedburg, and Walls as potential harm. Decision Papers at 12 (Disciplinary Board Order); Record Before the Disciplinary Board at 8-9 (Findings of Fact and Conclusions of Law). "Potential" more accurately describes the harm involved because even if the judges in all three cases had been presented with Dynan's actual rate, each judge may have chosen to use the $150 reasonable rate. See Carmick, 146 Wash.2d at 588, 603-04, 48 *453 P.3d 311 (stating that only potential harm occurred where it was not clear that a party would have received the full amount of interest on unpaid child support absent attorney misconduct). Therefore, Dynan's conduct caused only potential harm.

D. Presumptive Sanctions
In light of Dynan's ethical violations, mental state, and the resulting potential harm, we conclude that under the ABA Standards the presumptive sanction is disbarment. The ABA Standards provide that the presumptive sanction for serious criminal conduct that includes interference with the administration of justice, false swearing, misrepresentation, or fraud is disbarment. ABA Standards std. 5.11. Following these standards, the presumptive sanction for counts I and II is disbarment as these counts involve false swearing under oath in an official proceeding, a criminal violation. RCW 9A.72.020.[21] The presumptive sanction for count III, involving serving false billings on opposing counsel, is reprimand. ABA Standards std. 5.13.[22] The presumptive sanction for count IV, generally encompassing Dynan's misrepresentations to the tribunal and opposing counsel, is suspension. ABA Standards std. 6.12.[23] Because the final sanction should be consistent with the most serious violation, the appropriate presumptive sanction is disbarment. Anschell, 149 Wash.2d at 502, 69 P.3d 844.

E. Mitigating and Aggravating Factors
Since we have determined that the presumptive sanction is disbarment, we must consider any aggravating and mitigating factors that may increase or decrease this sanction. See ABA Standards stds. 9.22, .32 (listing aggravating and mitigating factors). Dynan offers several mitigating factors and challenges most of the Board's aggravating factors. We agree with three of the aggravating factors the Board found present: a pattern of misconduct, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in practicing law. Decision Papers at 13 (Disciplinary Board Order). We also agree that Dynan's absence of a disciplinary record is a mitigating factor. Id. However, we find that Dynan lacked a dishonest or selfish motive and add absence of a dishonest or selfish motive as a mitigating factor. We will address each challenged aggravating factor and suggested mitigating factor in turn.[24]
The Board determined that Dynan had a dishonest or selfish motive. Decision Papers at 13 (Disciplinary Board Order). However, this conclusion is not supported by the record or the Board's modified findings of fact. The Board states that Allstate, and not Dynan, received and benefited from the higher fee award in the Han case. Id. at 10 *454 (Finding of Fact 51). Further, in its discussion of an appropriate presumptive sanction, the Board states that Dynan did not act with an intent to deceive the court. Id. at 12. Additionally, the record shows that Dynan did not intend to deceive the court, did not intend to benefit himself, and did not receive a direct or indirect benefit from his actions. RP (Dec. 5, 2001) at 10-14, 56-57. In light of the record and the Board's modified findings of fact, we determine that Dynan did not have a dishonest motive because he lacked an intent to deceive the court, and Dynan did not have a selfish motive because he did not intend to benefit, and did not benefit, from the altered affidavits.
Regarding the second challenged aggravating factor, we agree with the Board that Dynan refuses to acknowledge his wrongful conduct. Although Dynan admits his declarations were sloppy, he does not acknowledge that his actions constitute falsification of evidence prejudicial to the administration of justice. RP (Dec. 5, 2001) at 23-24, 30. Dynan merely provides the court with rationalizations for his conduct. See Resp't's Br. at 34-35, 39, 42 (stating that the actual fees are immaterial, the purpose of fee shifting statutes is served even if a fee award is not based on the actual attorney fee, and no actual harm resulted from Dynan's actions). While explanations of an attorney's behavior may help the court understand why the misconduct occurred, reasoning away the misconduct does not constitute acknowledgment of misconduct. See generally Anschell, 149 Wash.2d at 513-14, 69 P.3d 844 (discussing rationalizations in the context of acknowledgment of wrongful conduct).
Addressing suggested, additional mitigating factors, Dynan argues that he fully cooperated with the investigation. Although the ABA Standards list this as a mitigating factor, the court has held that it is not. Whitt, 149 Wash.2d at 721, 72 P.3d 173; ABA Standards std. 9.32(e). Dynan and the dissent also point out that that he has changed his practices regarding attorney fee declarations eliminating the chance of repetitive misconduct. RP (Dec. 5, 2001) at 23-24; Dissent at 458-59. However, "[e]nding misconduct does not erase ... that misconduct which has already occurred." Dann, 136 Wash.2d at 83-84, 960 P.2d 416; see also Boelter, 139 Wash.2d at 103, 985 P.2d 328.[25] As the dissent notes, even where an attorney is rehabilitated, "the legal system itself has not been redeemed." In re Disciplinary Proceeding Against Kennedy, 97 Wash.2d 719, 722-23, 649 P.2d 110 (1982) (upholding a 60-day suspension even though Kennedy practiced for four years after the misconduct occurred without incident, the court found little chance of further misconduct, and the court believed that Kennedy had been rehabilitated); Dissent at 458-59. Here, Dynan ceased his conduct only after opposing attorney Apple questioned his practices, and we decline to find that Dynan's ending of the misconduct is an additional mitigating factor. RP (Dec. 5, 2001) at 23.[26]
The aggravating factors slightly outweigh the mitigating factors. However, based on a proportionality analysis, disbarment is inappropriate and a six-month suspension is the proper sanction.

F. Proportionality and Unanimity
The court will adopt the Board's recommended sanction unless the sanction is not proportionate or the Board was not unanimous in its decision. Miller, 149 Wash.2d at 277-78, 285-86, 66 P.3d 1069. Proportionate sanctions are those which are" `roughly proportionate to sanctions imposed in similar situations or for analogous levels of culpability.'" *455 Anschell, 141 Wash.2d at 615, 9 P.3d 193 (quoting In re Disciplinary Proceeding Against Gillingham, 126 Wash.2d 454, 469, 896 P.2d 656 (1995)). After conducting a proportionality analysis, and in light of our general rule that suspensions should be no less than six months in length, we hold that a six-month suspension is an appropriate sanction.
Four cases involving bill alterations and/or misrepresentations to clients and/or the court are similar to Dynan's case.[27] In Dann, an attorney engaged in initial-switching on prebilling work-in-progress statements, which gave one person credit for work performed by another. Dann, 136 Wash.2d at 71-72, 960 P.2d 416. This resulted in the overbilling of two clients. Id. at 78-79, 960 P.2d 416. Dann also secretly taped a phone conversation with another attorney and allowed an interested party to listen to the conversation. Id. at 76, 81, 960 P.2d 416. Dann, who previously had not been disciplined, received a one-year suspension. Id. at 82, 87, 960 P.2d 416.
In Haskell, a similar situation occurred. An attorney, who had an absence of a disciplinary record, substituted his initials and billing rate for the initials and rate of the associate that actually did the work. This resulted in overcharging a client by $3,136. Haskell also engaged in additional misconduct relating to travel expenses and burying expenses in clients' bills. Although the presumptive sanction was disbarment, based on a proportionality analysis Haskell received a two-year suspension. In re Disciplinary Proceeding Against Haskell, 136 Wash.2d 300, 305, 308-09, 320-22, 962 P.2d 813 (1998). In Boelter, an attorney with no disciplinary record received a six-month suspension for including false misrepresentations in a letter to a client, violating RPC 8.4(c) and 1.5, even though he claimed the conduct was only unintentional and negligent. Boelter, 139 Wash.2d at 88, 92, 94, 101-02, 106-07, 985 P.2d 328.
Finally, the attorney in Carmick violated RPC 3.3(f) and 3.5(c) "in his ex parte conduct before a tribunal by misrepresenting to the trial judge that all parties were aware of the requested ex parte order and had approved it." Carmick, 146 Wash.2d at 600, 48 P.3d 311. Carmick also violated RPC 4.2 "by contacting a party he should have known was represented by counsel." Id. Carmick, who had a prior disciplinary offense, received a 60-day suspension. Id. at 587, 605, 48 P.3d 311.
Like Dann and Haskell, Dynan altered billing statements. However, Dynan's conduct was not merely misrepresentation of information. Dynan knowingly falsified evidence and submitted this evidence to the court and opposing counsel. Dynan did not cease his conduct until contacted by Paul Apple. Further, while no actual harm occurred to clients, the prospect of potential harm to the court system and opposing counsel was very high. Moreover, Dynan's conduct prevented the court from considering evidence material to an attorney fee determination and prejudiced the administration of justice. Comparing Dynan's conduct with that of the attorneys' in the altered billings and misrepresentation cases, and following our precedent that a suspension generally should not be less than six months, we hold that a six-month suspension is appropriate. See Halverson, 140 Wash.2d at 495, 998 P.2d 833 (noting that a six-month to three-year suspension is the appropriate range for suspensions).
*456 Eight members voted for a nine-month suspension, one member abstained, and one member was in favor of a shorter suspension. Decision Papers at 3 (Disciplinary Board Order). Even where a recommendation is unanimous, the court may depart from the recommendation if there are clear reasons for doing so. See Miller, 149 Wash.2d at 285, 66 P.3d 1069 (noting that the court hesitates "`to reject a unanimous recommendation in the absence of clear reasons for doing so'") (quoting In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 96, 667 P.2d 608 (1983)). Here, clear reasons exist for departing from the Board's recommendation: lack of actual harm, lack of a selfish or dishonest motive, and a proportionality analysis. Therefore, we hold that a six-month suspension is appropriate, and decline to adopt the Board's recommended nine-month suspension.

CONCLUSION
Dynan knowingly altered bills and submitted false declarations to the court in support of his motions for attorney fees. Dynan also submitted documents reflecting the $150 per hour attorney fee to opposing counsel. Although he did not intend to deceive the court, Dynan falsified evidence, misrepresented his billing rate, submitted this evidence to the court and opposing counsel, and prejudiced the administration of justice. The presumptive sanction for false swearing is disbarment. However, based on a lack of actual harm, a lack of a selfish or dishonest motive, and a proportionality analysis, we depart from the Board's recommendation and hold that a six-month suspension is appropriate.
ALEXANDER, C.J., IRELAND, BRIDGE, CHAMBERS, and FAIRHURST, JJ., concur.
HUNT, J.[*], (dissenting).
I concur in the majority's threshold determination that the presumptive sanction for false swearing is disbarment. But I strongly disagree with the majority's analysis of (1) the aggravating and mitigating factors, (2) the proportionality of the sanction, and (3) the effect of the less-than-unanimous Board recommendation. In my view, suspending Dynan from practicing law for six months is excessive. Therefore, I respectfully dissent.
As the majority states, this court (1) "determines the presumptive sanction based on the ethical duty violated, the attorney's mental state, and the extent of actual or potential harm caused by the conduct"; and (2) "considers aggravating and mitigating factors, which may decrease or lengthen the presumptive sanction." See majority at 449, (citing In re Disciplinary Proceeding Against Halverson, 140 Wash.2d 475, 492-93, 998 P.2d 833 (2000)). As the majority also notes, "In disciplinary proceedings, the Supreme Court has `plenary authority' and the court's discretion is limited only by the evidence before it." See majority at 447 (citing In re Disciplinary Proceeding Against Whitt, 149 Wash.2d 707, 716, 72 P.3d 173 (2003)).
This court will not adopt the presumptive sanction if it is not proportionate to those imposed in similar situations or for similar conduct. In re Disciplinary Proceeding Against Miller, 149 Wash.2d 262, 277-78, 66 P.3d 1069 (2003). Moreover, lack of unanimity of the Board is also grounds for departing from its recommended sanction. See majority at 456; Miller, 149 Wash.2d at 285-86, 66 P.3d 1069.

I. AGGRAVATING FACTORS
The majority adopts three of the four aggravating factors the Board found: (1) a pattern of misconduct; (2) refusal to accept the wrongful nature of the conduct; and (3) substantial experience in practicing law. See majority at 453. Of these three, Dynan challenges only the second: refusal to accept the wrongful nature of the conduct. The record does not support this finding.[1]
*457 The majority posits that because Dynan rationalized his submission of $150 per hour attorney fees as a reasonable rate and an acceptable practice, he has failed to acknowledge his misconduct. In support, the majority cites In re Disciplinary Proceeding Against Anschell, 149 Wash.2d 484, 513-14, 69 P.3d 844 (2003).[2] Anschell's misconduct, however, is readily distinguishable from Dynan's.
In contrast to Dynan's three billing submissions, Anschell committed 11 ethical violations involving three matters. In the first case, this court found that Anschell committed the following ethical violations with respect to a current client who was deported: (1) conflict of interest for representing the client without consent from a former client, who had informed the Immigration and Naturalizations Service (INS) that the current client had fraudulently acquired permanent resident status; [3] (2) failure to disclose the conflict, even after the former client brought it to Anschell's attention; (3) "little or no action" in the current client's deportation case; (4) false statements to a third party on the current client's immigration documents; and (5) lack of diligence for failure to appear on time at the current client's permanent resident interview. Anschell, 149 Wash.2d at 494-95, 69 P.3d 844.
In a different deportation case, Anschell committed the following ethical violations: (1) lack of diligence for failing to contact his client about the deportation proceedings, failing to file a response brief in the case, and never attempting to send a copy of the INS's brief to his client; (2) failure to inform his client about the status of his case  even though the court had ordered his client deported  and failure to withdraw properly; and (3) failure to cooperate fully with the Bar investigators after his client filed a grievance against him. Id. at 499, 69 P.3d 844. The INS later took the client into custody and his new lawyer "attempted unsuccessfully to reopen the [client's] deportation proceedings." Id. at 498, 69 P.3d 844.
In another matter, while acting as an escrow agent, Anschell failed (1) to deposit a client's $27,763 check promptly into his (Anschell's) IOLTA account (Interest on Lawyer Trust Account), showing lack of diligence and failure to maintain identity of client funds; (2) to disburse funds from the firm's IOLTA account; and (3) to keep necessary records or to perform necessary accounting. Id. at 497, 69 P.3d 844.
Anschell "admitted" wrongdoing in these three cases, but he insisted that he caused no harm to the first deportation client or the escrow clients. Id. at 513, 69 P.3d 844. Moreover, he blamed the two deportation clients for his own shortcomings, arguing that "Bolusan was responsible for her own problems," id. at 513-14, 69 P.3d 844, and that it was "Barakat's responsibility to contact [Anschell] and provide instructions; otherwise, he, Anschell, had no obligation to do anything despite the fact [that] he was attorney of record." Id. at 514, 69 P.3d 844.
This court rejected Anschell's arguments about the first deportation client and the escrow matter as a "rationalization" and disparaged Anschell's "complete disregard for the need to properly maintain his trust account and preserve client funds." Id. at 514, 69 P.3d 844. As for Anschell's blaming his second deportation client, this court found that Anschell's "belated concession [of wrongdoing] appears solely aimed at countering this aggravating factor, rather than a true acknowledgement of wrongful conduct." Id.
I respectfully decline to find, as the majority does, that under Anschell, Dynan has failed to acknowledge his wrongful conduct. See majority at 454. In my view, the principle underlying Anschell is that perfunctory or disingenuous "admissions" of wrongdoing are insufficient to qualify as acknowledgements of wrongdoing, especially when coupled with a blatant refusal to acknowledge that the misconduct harmed the client or when the offending attorney blames the *458 client for his own egregious violations, as did Anschell.
Dynan's case is factually and qualitatively distinct. Contrary to the Board's finding (and unlike Anschell), Dynan did acknowledge that his actions in these matters could have been potentially misleading. Moreover, he stopped this method for submitting reasonable attorney fee requests to the court as soon as he learned about the problem. And most significantly, unlike Anschell, Dynan never tried to blame anyone else for his actions; he merely tried to explain  in his own defense at the disciplinary proceedings  why he had altered and adjusted his actual discounted billings to reflect what he considered to be a reasonable rate of $150 per hour, believing this was acceptable practice.[4]
I disagree with the majority's finding that Dynan provided only "rationalizations for his conduct." See majority at 454. The record shows that Dynan simply attempted to explain his behavior during the disciplinary proceedings, without trying to shirk his responsibility.[5] Again, because the record does not support this finding, the majority improvidently considers failure to acknowledge the wrongfulness of his conduct as an aggravating factor in deciding the appropriate sanction for Dynan.

II. MITIGATING FACTORS
The majority rejects Dynan's assurance that he has changed his practices and, thus, eliminated the possibility of future violations, citing In re Disciplinary Proceedings Against Dann, 136 Wash.2d 67, 960 P.2d 416 (1998). See majority at 454. Again, in my view, the majority misapplies the Dann holding to the facts here.
Dann was a partner in a small law firm, 136 Wash.2d at 71, 960 P.2d 416, who switched the initials of the attorney working on various tasks (1) so that he could charge clients a higher rate, 136 Wash.2d at 78-79, 960 P.2d 416; and (2) to conceal the identity of the attorney working on a client's project where the client had specifically told Dann he did not want that particular attorney on his case. 136 Wash.2d at 72, 960 P.2d 416. Dann's partners openly discussed the initial-switching and decided to discontinue the practice. One partner sent an e-mail to all partners, including Dann, "warning of `major league trouble' if the initial-switching practice continued and was discovered." Id. at 72, 960 P.2d 416. In spite of his partners' admonition, Dann continued to switch attorneys' initials on billings illegally; unlike Dynan, he did not act to end his misconduct. Id. at 84, 960 P.2d 416.
In stark contrast, as soon as Dynan learned of the problem, he ceased his practice of altering discounted client billings to reflect a reasonable attorney fee of $150 per hour for submission to the court. The majority minimizes this distinction and instead quotes from Dann that "`[e]nding misconduct does not erase ... that misconduct which has already occurred.'" See majority at 454. Although true, this quote hinders, rather than aids, our analysis. By focusing on the discontinued misconduct, it ignores what should be a major factor in determining an appropriate sanction, namely the qualitative difference between an attorney like Dynan, who took the initiative to correct his unintentional misrepresentation, and an attorney like Dann, who intentionally and defiantly continued his illegal practice in order to deceive his clients and to collect more fees.
I am mindful that Dynan's self-initiated ceasing of his questioned billing practice does not absolve him of responsibility for his misconduct. And I agree with the majority that we should discipline him. As this court has previously stated, "Even where an attorney *459 has been rehabilitated prior to the imposition of discipline, `the legal system itself has not been redeemed.'" Dann, 136 Wash.2d at 84, 960 P.2d 416 (citing In re Disciplinary Proceeding Against Kennedy, 97 Wash.2d 719, 723, 649 P.2d 110 (1982)). Nonetheless, I would find that Dynan's self-initiated ceasing of his misconduct is a significant mitigating factor that should reduce the severity of his sanction. See, e.g., Halverson, 140 Wash.2d at 495-97, 998 P.2d 833, focusing on sanction selection to provide an effective means for protecting the public. Here, suspending Dynan from the practice of law for six months will not provide additional public protection beyond Dynan's already self-imposed revision of his conduct.

III. PROPORTIONALITY
The majority notes that this court will not adopt the Board's recommendation where "the sanction is not proportionate." See majority at 454. The majority then quotes Anschell's definition of "proportionate sanctions" as "those which are `roughly proportionate to sanctions imposed in similar situations or for analogous levels of culpability.' Anschell, 141 Wash.2d at 615, 9 P.3d 193." See majority at 454-55. Yet in my view, the majority is doing the opposite by imposing on Dynan a sanction that is grossly disproportionate to sanctions this court has imposed in similar situations for even greater levels of culpability and harm to the administration of justice. Other attorneys facing discipline for more egregious actions,[6] including misrepresentations to the court, have received sanctions significantly less harsh than the nine-month suspension the Board recommended and the six-month suspension the majority imposes on Dynan here.
*460 In reducing the Board's recommended suspension from nine to six months, the majority cites "our precedent that a suspension generally should not be less than six months," citing Halverson, 140 Wash.2d at 495, 998 P.2d 833. Majority at 455. This court noted in Halverson that this general six-month minimum is based on the ABA Standards,[7] which explain that short-term suspensions for less than six months generally" `are not an effective means of protecting the public.'" Halverson, 140 Wash.2d at 495, 998 P.2d 833 (quoting ABA Standards std. 2.3) (emphasis added).
This court further noted, however, that there are exceptions to this general rule, allowing a "minimal suspension" "where the mitigating factors clearly outweigh any aggravating factors." Halverson, 140 Wash.2d at 497, 998 P.2d 833.[8] In my view, the mitigating factors in Dynan's case clearly outweigh the aggravating factors and, therefore, the majority should reduce his sanction to substantially less than six months suspension.
As this court explained in footnote 16 in Halverson,
[W]e do not mean to suggest that the ABA STANDARDS require a specific sanction for any particular lawyer misconduct. In fact, quite the opposite is true. The background section of the ABA STANDARDS states: "[T]he Sanctions Committee recognized that any proposed standards should serve as a model which sets forth a comprehensive system of sanctions, but which leaves room for flexibility and creativity in assigning sanctions in particular cases of lawyer misconduct." ABA STANDARDS, Preface at 1. The methodology section further states: "[O]ne will look in vain for a section of this report which recommends a specific sanction for, say, improper contact with opposing parties who are represented by counsel ..., or any other specific misconduct." ABA STANDARDS, Preface at 3. Finally, the theoretical framework section states: "The standards thus are not analogous to criminal determinate sentences, but are guidelines which give courts the flexibility to select the appropriate sanction in each particular case of lawyer misconduct." ABA STANDARDS, Theoretical Framework at 6.
Halverson, 140 Wash.2d at 497, n. 16, 998 P.2d 833. (emphasis added). Dynan's case calls for such "flexibility and creativity in assigning sanctions"; no purpose is served here by unquestioned adherence to a general six-month suspension.
Just two years ago, for example, this court exemplified such flexibility when it imposed only a two-month suspension against a lawyer who had been recently disciplined and whose conduct caused more harm to the administration of justice than did Dynan's. In re the Disciplinary Proceeding Against Carmick, 146 Wash.2d 582, 48 P.3d 311 (2002). Carmick made false statements to the trial court to facilitate an ex parte order releasing to his client court-held interest due on past child support without prior notice to the opposing party, who was legally entitled to the money. 146 Wash.2d at 596, 48 P.3d 311. He blatantly misled the trial court by representing that he had informed both the opposing party and her attorney that he would be *461 presenting the order for the court to sign and that they had approved the order. Id.
Not only did Carmick substantially mislead the trial court, but also he violated another rule of professional conduct, RPC 4.2:(1) He communicated with the opposing party (his client's ex-wife) directly, without the knowledge or consent of her counsel; (2) he falsely told the opposing party that her attorneys were not available for her to consult because they were either in trial or on vacation; and (3) he persuaded her to settle for only $5000 of the $12,000 his client owed her, without telling her that $11,000 was already on deposit with the court and available to her. Instead, he implied that if she did not settle, she would likely recover even a smaller amount. Id. at 589-90, 598, 48 P.3d 311.
Holding that Carmick had knowingly made misrepresentations to the trial court that affected the administration of justice,[9]id. at 603, 48 P.3d 311, this court nonetheless imposed only a 60-day suspension. Id. at 607, 48 P.3d 311. Moreover, this court imposed only a 60-day suspension in spite of (1) the Washington State Bar Association's argument that a 60-day suspension was too lenient, id. at 594, 48 P.3d 311; (2) Carmick's previous disciplinary offense just two years earlier for violating the duty of confidentiality, id. at 605, 48 P.3d 311; and (3) the significant potential financial harm to the opposing party that Carmick's violations caused, id. at 591, 48 P.3d 311.
Comparing Dynan's misconduct with Carmick's should lead us to conclude that Dynan should receive a lesser sanction than Carmick received, not the trebled sanction the majority imposes. Dynan submitted to the trial court a request for reasonable attorney fees, supported by client billings with hourly rates altered to reflect a reasonable rate rather than his billed discounted rate. But Carmick knowingly made false, ex parte misrepresentations to persuade the trial court to release money to which the opposing party, not his client, was not entitled. This court found that
Carmick's conduct during the ex parte proceeding ... [was] the most serious of the violations.... While we consider all alleged violations of the RPCs with great seriousness, we view misrepresentations to the court in ex parte proceedings with particular disfavor. The duty of candor in an ex parte proceeding directly influences the administration of justice. We cannot, and will not, tolerate any deviation from the strictest adherence to this duty. In the simplest terms, an attorney in an ex parte proceeding who knowingly misrepresents to a judge the ex parte order is known to the opposing party and approved by that party shall be subject to discipline.
Id. at 594-95, 48 P.3d 311 (emphasis added; footnotes omitted).
In contrast, Dynan did not directly contact or deceive an opposing party represented by counsel. Dynan did not present the trial court with an ex parte order without notice to the opposing party. Nor did Dynan intend to deceive or falsely assure the court that he had given such notice and that the opposing party had approved the ex parte order.
The majority cites three other cases in support of its six-month suspension of Dynan from the practice of law: Dann, 136 Wash.2d at 70, 960 P.2d 416; In re Disciplinary Proceeding Against Haskell, 136 Wash.2d 300, 962 P.2d 813 (1998); and In re Disciplinary Proceeding Against Boelter, 139 Wash.2d 81, 985 P.2d 328 (1999). But these cases are not factually "similar" as the majority asserts. See majority at 455.
As more thoroughly explained in section II of this dissent (Mitigating Factors), a critical distinction between Dann and Dynan is that Dynan immediately initiated corrective action *462 once his unintentional misrepresentation was brought to his attention, whereas Dann intentionally continued his illegal misrepresentations in order to deceive his clients and to collect higher fees even after his partners admonished him to stop.
Similar to Dann, Haskell also purposefully falsified client billings by substituting his initials for those of the lower-hourly-rate attorneys who had actually done the work. Haskell did this to disguise that he had not personally worked on these cases as the clients had specifically requested and expected. Haskell also fraudulently billed clients for personal expenses, which the hearing officer found violated RPC 8.4(b) (criminal act that reflects adversely on a lawyer's honesty or trustworthiness) through a violation of RCW 9A.56.030 (theft in the first degree) and violation of 18 U.S.C. § 1341 (mail fraud). Haskell, 136 Wash.2d at 308-09, 962 P.2d 813. In contrast, Dynan did not mislead, steal from, or harm his client in any way; rather, he tried to benefit his client.
Moreover, in Haskell, this court reaffirmed the well-settled principle that:
This court will not disturb a hearing officer's findings of fact if they are supported by a clear preponderance of the evidence. In re Discipline of McMullen, 127 Wash.2d 150, 896 P.2d 1281 (1995). While the hearing officer's findings are not conclusive, they are entitled to great weight, particularly "when the credibility and veracity of witnesses are at issue." [In re] Allotta, 109 Wash.2d [787], 793-94[, 748 P.2d 628 (1988)].
136 Wash.2d at 310, 962 P.2d 813. Yet here in Dynan's case, the majority departs from the hearing officer's findings, which are both supported by a clear preponderance of the evidence and based, at least in part, on the hearing officer's assessment of the witnesses' credibility and veracity.
Boelter also defrauded a client by billing unreasonable fees and extorted the client by threatening to reveal the client's confidences in a suit to collect these fees, a practice that this court described as "outrageous." Boelter, 139 Wash.2d at 93, 985 P.2d 328. In addition, Boelter asked a law firm associate to destroy some pertinent records during the pendency of the disciplinary proceedings against him. As the hearing officer in Boelter noted,
"[T]here was injury to the client who not only overpaid for the services rendered, but was forced to hire other counsel to defend himself from the lawyer who was threatening to use confidential information against the client.... [T]he legal system was injured as well in that a lawsuit [was] filed alleging a debt of $1,803.97 when the actual amount of the debt should have been $186.48."
139 Wash.2d at 101, 985 P.2d 328 (citation omitted).
In contrast, Dynan did not threaten to breach a client's confidence in order to collect unreasonable fees for himself; nor did he cause harm to his client, as Boelter did to his client, who had to hire another attorney to represent him against Boelter. Dynan sought only to collect reasonable attorney fees for his client from the losing party in a lawsuit. Dynan was acting as a dedicated advocate for his client, however misguided his method for submitting his request to the court may have been; but he did not harm his client.
Even though Dynan's conduct falls within the disciplinary code's definition of misrepresentation to the court, RPC 3.3(a)(1), in my view, his misrepresentations had far less negative impact on the administration of justice than did Carmick's intolerable deviation from his strict duty of candor in an ex parte proceeding.[10]Carmick, id. Yet the majority *463 imposes on Dynan a disproportionately severe sanction, three times more severe (six-month suspension) than this court imposed on Carmick (60-day suspension).

IV. CONCLUSION
I would find that Dynan's mitigating factors significantly outweigh his aggravating factors, both qualitatively and quantitatively, and reject the Board's nonunanimous recommendation of a nine-month suspension as grossly disproportionate and unnecessary to achieve the disciplinary code's objectives. Accordingly, I would reprimand Dynan.[11]
SANDERS and MADSEN, JJ., concur.
NOTES
[1] The RLDs were superseded by the Rules for Enforcement of Lawyer Conduct (ELC) on October 1, 2002. The RLDs were applied to all proceedings in this case, which was ordered to hearing prior to October 1, 2002. See ELC 16.1.
[2] Finding of fact 12 states that Paul Apple, the plaintiff's lawyer in Le v. Hedberg, Pierce County Superior Court No. 97-2-12023-9, asked Dynan if the billing rate in his declarations was the true billing rate. Dynan told Apple it was not, a mistake had been made, and he would correct it, but the case settled before a correction was made. Decision Papers at 5 (Disciplinary Board Order). Apple and Dynan's testimony support this finding. Report of Proceedings (RP) (Dec. 4, 2001) at 25-29 (Apple's testimony of the events in finding of fact 12); RP (Dec. 5, 2001) at 30-32 (Dynan's testimony explaining the fees were not the actual fees and he would correct it).
[3] See RLD 6.7(e) (stating that the Board may modify the hearing officer's findings of fact). Additionally, it should be noted that any time a finding of fact is referenced it should be assumed that we are referring to the Board's modified findings of fact, as the hearing officer did not number her findings of fact or conclusions of law. See Record Before the Disciplinary Board at 3-9 (Findings of Fact and Conclusions of Law).
[4] Although the Han declarations are slightly different from those in Hedberg and Walls, they are included in the term "declaration" throughout the opinion because they portray the same information and misconduct as the other declarations: "the billings attached are true and correct," when in reality the billings are altered.
[5] It should be noted that Dynan's chosen hourly rate of $150 was reasonable and he was not trying to enhance his fee by arguing that a current rate or a historic fee adjusted for inflation should be used instead of the rate at the time services were rendered. See RP (Dec. 4, 2001) at 140, 157 (testimony supporting $150 as a reasonable hourly rate); Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wash.2d 364, 377-78, 798 P.2d 799 (1990) (explaining that fee enhancement will not be extended beyond civil rights litigation); Decision Papers at 11-12 (Disciplinary Board Order) (explaining that reasonableness of the fee was not argued and fee enhancement is not the real issue in this case).
[6] Although Dynan's staff, and not Dynan himself, actually whited out the correct billing rate, the staff did so at Dynan's direction. RP (Dec. 5, 2001) at 54-55. Whether Dynan is responsible for his staff's actions is not in issue. See RPC 5.3. Therefore, throughout this opinion, we will refer to Dynan's actions and/or the staff's actions interchangeably (e.g., Dynan altered the billing statements).
[7] Dynan does not assign error to finding of fact 53, which states that he acted knowingly, but he argues he acted negligently. Resp't's Br. at 16, 40-43. However, this finding is supported by a preponderance of the evidence, so we will uphold it. See infra section B (discussing Dynan's mental state).
[8] Finding of fact 23 states that Dynan's client received $12,675 in attorney fees resulting in Han paying $3,449 more than Dynan's actual fees. However, the overpayment should be viewed as an approximation because exhibit 9 shows the actual fee award was for $13,501.64.
[9] Although the court previously considered five factors (the Noble factors) only proportionality and Board unanimity currently are considered in light of the adoption of the ABA Standards and the ELCs, even in cases applying the RLDs. In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 667 P.2d 608 (1983); See Miller, 149 Wash.2d at 275 n. 17, 278 n. 20, 66 P.3d 1069.
[10] Dynan argues that appropriate conclusions of law may not be reached because the hearing officer did not appropriately set out her findings of fact. However, regardless of how the hearing officer set out her findings of fact, we uphold the Board's conclusions of law where they are supported by the Board's modified findings of fact, which are appropriately set out.
[11] We recognize that finding of fact 12 was directly challenged and finding of fact 53 was indirectly challenged, but as noted above, both are supported by a preponderance of the evidence. See supra notes 2, 7.
[12] "Count I: By knowingly making a false statement of material fact to a tribunal in the form of false declarations that he filed with the tribunal in the Hedberg and/or Han and/or Walls cases, Mr. Dynan violated RPC 3.3(a)(1)." Decision Papers at 4 (Disciplinary Board Order).
[13] The mental element of Dynan's misconduct will be discussed after each ethical violation is addressed because Dynan's mental state for all violations was knowing.
[14] See infra pp. 451-52 for a discussion on the lodestar method.
[15] Mr. Apple testified that sometimes attorneys ask for fee awards without submitting proof of the fee and in this case the actual fee may be lower than the reasonable fee. RP (Dec. 4, 2001) at 57-58. However, the court should provide a record for the basis of its fee award and should require the attorney to provide documentation of his fees when it is feasible for the attorney to do so. See Mahler v. Szucs, 135 Wash.2d 398, 434-35, 957 P.2d 632, 966 P.2d 305 (1998) (requiring the court to provide an adequate record for its fee award decisions).
[16] Several witnesses testified that they would assume or expect the billings were accurate or unaltered. RP (Dec. 4, 2001) at 119-20, 173-75, 224-25.
[17] "Count II: By knowingly offering altered itemized billing records as evidence in the Hedberg and/or Han and/or Walls cases, Mr. Dynan violated RPC 3.3(a)(4). Count III: By serving false declarations and/or false itemized billing records on opposing counsel in the Hedberg and/or Han and/or Walls cases, Mr. Dynan violated RPC 3.4(b)." Decision Papers at 4 (Disciplinary Board Order).
[18] "Count IV: By misrepresenting to the tribunal and/or opposing counsel the true hourly rate he charged in the Hedberg and/or Han and/or Walls case, Mr. Dynan violated RPC 8.4(c) and (d)." Decision Papers at 4 (Disciplinary Board Order).
[19] Dynan's mental state is relative to the presumptive sanction and to conclusively deciding whether a violation of RPC 3.3(a)(1) and (4) occurred. A violation of these rules does not occur unless the lawyer acts with knowledge. See supra pp. 449-51.
[20] See supra note 8.
[21] Counts I and II are considered together because these counts involve Dynan's false declarations to the court and the altered billings attached to the declarations. Further, although the Han declarations may be the only declarations technically made under oath under the criminal law, this is enough to constitute serious criminal conduct, and the issue of whether all declarations constitute criminal conduct is not before us. See RCW 9A.72.010(2), .020, .085; Ex. 5, 8.
[22] Reprimand is appropriate when a lawyer knowingly engages in conduct involving misrepresentations, which reflect on his fitness to practice law. ABA Standards std. 5.13.
[23] Suspension is appropriate "when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding." ABA Standards std. 6.12 at 40.
[24] Two aggravating factors, substantial experience practicing law and pattern of misconduct, will not be discussed. Dynan did not challenge substantial experience practicing law as an aggravating factor. Resp't's Br. at 44-45. Regarding a pattern of misconduct, Dynan mentions that all violations are based on the same conduct, but he does not specifically challenge this aggravating factor. Id. Further, as discussed above, Dynan's actions in Hedberg, Han, and Walls clearly establish a pattern of misconduct: Dynan committed RPC violations against the Pierce County Superior Court in at least three cases over an extended period of time and against opposing counsel, Paul Apple. See Anschell, 141 Wash.2d at 615, 9 P.3d 193 (explaining how a pattern of misconduct may be established where there are multiple RPC violations against separate clients over an extended period of time).
[25] The dissent tries to distinguish this case from Dann by noting that Dynan, unlike Dann, stopped falsifying evidence on his own accord. Dissent at 458-59. However, Dynan stopped his misconduct only after opposing attorney Paul Apple questioned his practices. RP (Dec. 5, 2001) at 23. Further, the fact that Dann did not initiate the end to the misconduct seems secondary to the court's conclusion that ending misconduct does not erase the misconduct. See Dann, 136 Wash.2d at 83-84, 960 P.2d 416.
[26] Dynan urges the court to accept his good character or reputation as an additional mitigating factor. Several witnesses, including judges, testified as to Dynan's ethical character. RP (Dec. 4, 2001) at 70, 92-93, 116-17, 121, 131, 161, 163-64, 183, 190-91, 207, 216-17. Whether or not we adopt this factor is inconsequential because it is not enough to alter the sanction.
[27] The dissent discusses two other cases resulting in discipline less than a suspension: In re Disciplinary Proceeding Against Miller, 99 Wash.2d 695, 663 P.2d 1342 (1983), and In re Disciplinary Proceeding Against Grubb, 99 Wash.2d 690, 663 P.2d 1346 (1983). Dissent at 459 n. 6. Neither case is persuasive in our proportionality analysis because both involve charges dissimilar to those against Dynan. In Miller, an attorney who had previously been reprimanded, was reprimanded and censured for failure to represent a client or withdraw and for attempting to defraud and deceive a casino. 99 Wash.2d at 696, 701, 663 P.2d 1342. The attorney in Grubb had a previous censure and received a reprimand for losing client property given in exchange for a nonrefundable retainer. 99 Wash.2d at 690-91, 694, 663 P.2d 1346. Dynan's actions are significantly different: falsifying evidence, submitting false evidence to the court and opposing counsel, misrepresenting evidence, and prejudicing the administration of justice. Therefore, Miller and Grubb do not convince us that censure or reprimand is an appropriate sanction for Dynan.
[*] Judge J. Robin Hunt is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).
[1] Dynan also challenges the Board's finding of dishonest or selfish motive as a fourth aggravating factor. The majority, however, correctly finds that "Dynan lacked a dishonest or selfish motive," removes it as an aggravating factor, and adds the "absence of a dishonest or selfish motive as a mitigating factor." Majority at 453.
[2] Anschell was disbarred.
[3] The former client and his ex-wife (the new client's aunt) informed the INS about the new client in order to obtain immunity for themselves in connection with their own involvement in the scheme to secure the new client's legal status. Anschell, 149 Wash.2d at 491, 69 P.3d 844.
[4] See also In re Disciplinary Proceedings Against Dann, 136 Wash.2d 67, 81, 960 P.2d 416 (1998) (this court found attorney refused to acknowledge wrongful conduct where attorney was "remorseless" and briefs were "full of animus" toward the whistle-blower associate who initiated the bar investigation).
[5] To find otherwise would effectively chill an attorney's ability to defend himself  and his livelihood  in disciplinary proceedings. Under the majority's application of Anschell, any attorney who tries to explain his actions would be failing to acknowledge the wrongfulness of his actions, thereby adding an aggravating factor to the sanction determination.
[6] When the recommended sanction in attorney discipline cases is less than suspension, no party has a right of appeal. See Rules for Enforcement of Lawyer Conduct (ELC) 12.3(a); RLD 7.2(a). Thus, there are few reported cases with a sanction less severe than suspension.

Some cases resulting in only a reprimand involve attorney misconduct more destructive to the administration of justice than Dynan's conduct here. These cases, however, involve deceit of clients or others rather than misrepresentations to the court. See, e.g., In re Disciplinary Proceeding Against Miller, 99 Wash.2d 695, 663 P.2d 1342 (1983); In re Disciplinary Proceeding Against Grubb, 99 Wash.2d 690, 693, 663 P.2d 1346 (1983).
In Miller, this court censured an attorney for "failing to either competently represent [his client] or withdraw from his case," and reprimanded the attorney for attempting to defraud a casino. 99 Wash.2d at 701, 663 P.2d 1342. Concerning the attempt to defraud, Miller was found to have entered into a "scam" where he would purchase cashier's checks from a Washington bank, use the checks to purchase gambling chips at Nevada casinos, and once he lost the chips, return to Washington and attempt to stop payment on the checks. Id. at 700-01, 663 P.2d 1342.
This court found that "Miller seems to regard the law as a `bag of tricks' which he may use at his pleasure to deceive and mislead others," and that Miller's explanations to the contrary were "utterly without ethical justification and completely reprehensible." Id. at 701, 663 P.2d 1342. The court concluded that Miller's activities were "an egregious violation of the Code of Professional Responsibility." Id. Yet this court held that the appropriate sanction for Miller  who had earlier been reprimanded for entering into an unauthorized settlement agreement  was another reprimand. Id. at 696, 701, 663 P.2d 1342.
In Grubb, the attorney had (1) taken a client's ring worth $24,000 to secure a $500 nonrefundable retainer; (2) failed to give a receipt; (3) failed to return the ring when the client discharged him soon thereafter; (4) failed to put the ring in a secure place; (5) took it home and showed his wife; (6) "lost it"; (7) did not tell his former client for two years about the loss; and (8) led his former client to believe that he still had possession of the ring, which was a blatant lie. 99 Wash.2d at 691-92, 663 P.2d 1346. Grubb had previously been censured for neglecting a legal matter. Id.
This court rejected the board's unanimous recommendation that Grubb receive a 60-day suspension, recognizing that
[t]he hearing officer found that Grubb was contrite and that the likelihood of recurrence was "quite slim". The only remaining concern is the quantum of punishment necessary to assure the public that professional misconduct will not be lightly regarded. We believe a reprimand will satisfy this test. A 60-day suspension would be extremely harsh and out of proportion to the severity of the offense. Grubb's record before the Washington State Bar Association now stands at two censures and one reprimand. We trust he has learned from his mistakes, and will not repeat them.
Id. at 693-94, 663 P.2d 1346 (emphasis added).
Although these cases do not involve misrepresentations to the tribunal, they are nonetheless serious violations. And, unlike Dynan, the attorneys in these cases had both previously been sanctioned for their conduct, yet in both matters, this court determined that reprimand was a sufficient and proportionate sanction.
[7] THE AMERICAN BAR ASSOCIATION'S STANDARDS FOR IMPOSING LAWYER SANCTIONS (1991 & Supp.1992) (ABA STANDARDS).
[8] In re Disciplinary Proceeding Against Halverson, 140 Wash.2d 475, 495-96, 998 P.2d 833, 845 (2000):

Although six months is the generally accepted minimum term of suspension, this Court has occasionally imposed a shorter term of suspension when a less severe suspension is warranted by specific mitigating circumstances or when aggravating circumstances justify a more severe sanction than a letter of censure. See, e.g., [In re Disciplinary Proceedings Against] Johnson, 118 Wash.2d [693], 697, 705, 826 P.2d 186 [(1992)] (60-day suspension appropriate where attorney voluntarily reaffirmed contractual obligations to client in bankruptcy proceedings; court declined to impose six-month suspension because it would have "drastic effect" upon Johnson's ability to continuing repaying his clients); In re Disciplinary Proceeding Against Felice, 112 Wash.2d 520, 772 P.2d 505 (1989) (30-day suspension rather than mere censure appropriate for neglect of guardianship duties where attorney had substantial experience, refused to acknowledge wrongdoing and where client was 86 years old and incompetent).
(Footnote omitted, emphasis added.)
[9] See Carmick, 146 Wash.2d at 590, 48 P.3d 311:

The WSBA alleged three counts of misconduct. Count I alleged Carmick violated RPC 4.1(a) and RPC 8.4(c) by misrepresenting through omission [the opposing party's] ability to collect the interest due from [his client]. Count II alleged Carmick violated RPC 3.3(f), 3.4(c), 3.5(b), 4.1(a), and 8.4(d) by making misrepresentations to the superior court in his motion for an ex parte order to disburse funds and by failing to serve notice on the parties of the ex parte motion and order. Count III alleged Carmick violated RPC 4.2 by contacting [the opposing party] whom he knew, or should have known, was represented by counsel.
[10] This court noted in Carmick,

The WSBA, contending Carmick's actions were intended to further a scheme to defraud [the opposing party] of $6,000, asserts Carmick's actions were knowing or intentional. The Disciplinary Board found in committing these violations Carmick was knowing or negligent.
We conclude Carmick's misrepresentation that [the opposing party] and Butler [opposing party's attorney] knew of the ex parte order was knowing since Carmick knew as he made the statement he had not sent either of them notice before his appearance. Similarly, when Carmick assured the superior court Butler had authorized Carmick's contact directly with [the opposing party], he knew he had not consulted with Butler at any time during the proceedings.
146 Wash.2d at 602-03, 48 P.3d 311.
[11] At most, I would significantly shorten his suspension below that of Carmick's two-month suspension.